HARRY C. KNIGHT et al.

*v.*

DAVID B. HALLINGER.

[Filed March 21st, 1899.]

1. One about to build contracted not to build any part of his front foundation wall any nearer the curb than was the foundation on an adjoining lot.—*Held*, that this did not prevent his building a bay window, and extending the upper story out beyond the foundation line.

2. The adjoining lot owner having stood by without objection while the foundation was being extended for the bay window, and while the window and superstructure were being erected thereon, he was not entitled to a decree for its removal.

3. Both parties being at fault, costs were refused.

On bill, answer and proofs.

The complainants in 1894 were owners of a lot on Maple avenue, at Merchantville, in Camden county, on which they had built a cottage. In 1896 the defendant purchased the adjoining lot.

The line of the foundation wall of the complainant's house was set back at some distance from the front street, and a porch in front extended somewhat nearer to the street. When the defendant proposed to build on his lot, he indicated a purpose to locate his foundation wall much nearer to the curb line of the street than the complainant's. The latter then arranged and entered into an agreement with the defendant as to the distance

Knight *v.* Hallinger.

from the curb on Maple avenue, at which the defendant should build his front foundation wall. This agreement is in the words and figures following :

"ATLANTIC CITY, N. J., July 13, 1896.

"In consideration of the sum of sixty-five ($65) dollars, the receipt of which is hereby acknowledged, I do hereby agree not to build any part of the front foundation wall of the new dwelling which I am about to erect on Maple avenue, Merchantville, N. J., any nearer the line of the curb on Maple avenue than the front foundation now lies of the dwelling belonging to H. C. Knight, located on the adjoining lot on the east known as No. 10 West Maple avenue.

"D. B. HALLINGER."

The complainants paid to the defendant the $65 named in the agreement and the defendant went on with the erection of his house. In the early part of August, 1896, the complainant again saw the property. The front wall was then up and the house was being boarded in, and the complainant swears that he then " saw it was in violation of the terms of the agreement," and he claims that he notified the defendant by the following letter, which he sent by mail :

"PHILADELPHIA, August 22, 1896.

" *D. B. Hallinger, Esq., Camden, N. J. :*

"DEAR SIR—I beg to advise you that I note that you have not complied with the terms of the agreement given me in reference to building the front foundation of your new dwelling adjoining mine at Merchantville, any nearer the line of the curb than the foundation of my house lies. You have built quite a large bay window in the front of your house extending out some four feet nearer the curb than the foundation line, and which is clearly in violation of our agreement.

" Yours faithfully,
" (Signed)        H. C. KNIGHT."

The defendant testifies that he never received the above letter. He proceeded with his building and finished his house, and the complainant filed his bill alleging that their agreement was that the defendant

" would not build any building or any part or portion thereof, nor build any part of *the front foundation wall thereof nearer the curb on Maple avenue aforesaid, than the front foundation of your orator's said dwelling now lies,* or in any way place any projection, erection or obstruction to your orator's view or light or air, nearer the curb than the said front foundation of your orator's said dwelling now lies ; "

charging a breach thereof by defendant by placing his front wall ten feet or thereabouts nearer said curb line than complainant's, and praying that defendant be decreed to perform his contract, and be restrained from continuing the erection of said building or any other obstruction nearer the curb line of Maple avenue than the front foundation of the complainant's building.

The defendant admits the contract and denies any breach of it. He states that in consideration of his agreement he had retired the location of his home some ten feet further back than he had begun to construct it, and had filled up his cellar then dug, and began anew, and "placed the foundation wall upon a line exactly in conformity with said agreement, and on direct line westward from complainant's front foundation;" that defendant's front porch line is the same as complainant's; that complainant lived in his adjoining home, and saw the defendant's house located and built as stated, and expressed himself as satisfied therewith.

At the hearing the complainant in his testimony admitted that the front porch lines of the two houses were exactly the same; that the foundation walls of both were on the same line with the exception that the defendant had built a bay window out into his porch beyond the line of his front foundation wall and had extended that wall around under the bay window towards the street. The defendant's front foundation wall is to this extent about four and a half feet nearer the curb line than was the complainant's front foundation wall. The second story, the main body of the house, rests on this extension, and on that floor comes almost to the line of the front porch.

On this showing the complainant insists that he is entitled to his remedy against the defendant—first, that the front foundation wall, because it is built out under the bay window extends nearer to the curb line than does the complainant's, must be removed; and, second, that the bay window and the second story resting on it are also nearer to the curb and cut off complainant's light and air, and must also be taken away.

There is a suggestion in the bill that these buildings of the defendant interfere with the complainant's enjoyment of light,

air, view, &c., but there is neither allegation nor proof of any circumstance whereby the defendant, in respect to his lot, was under any obligation to hold it servient to the complainant's lot for an easement of light, air, &c., save as the agreement of July 13th, 1896, may have imposed such a charge.

Nor does anything in that agreement prohibit the erection either of the bay window itself or of the superstructure above it. The agreement begins and ends with the fixing of the location of the front foundation wall, and there is nothing shown in the case which indicates that the parties either made or intended to make any contract touching these superstructures. The complainant has erected a front portico beyond the line of his front foundation wall, and he does not now question the defendant's right in doing the same thing.

The complainant accepted an agreement limited to the location of the defendant's front foundation wall; he cannot successfully ask this court to better it by enjoining the building of a super-structure not prohibited by the agreement.

The question remains, should the defendant be decreed to re-move that part of his front foundation wall which is located under the bay window?

The defendant insists that his protrusion of a foundation wall under his bay window is no breach of his agreement; that the "front foundation wall of the new dwelling" mentioned in the contract, refers to the front cellar wall of the house and cannot be construed to prohibit him from erecting a foundation wall under the bay window; that "the house line is the cellar line."

As to the construction of the agreement, I think the fair meaning of the words used, by which the defendant agreed "not to build any part of the front foundation wall of the new dwell-ing * * * any nearer to the line of the curb," &c., than the line of complainant's wall preclude the location of the de-fendant's front foundation wall used under any part of his dwelling, whether under the main building or its bay window, nearer to the curb than the complainant's wall is placed. Nor does the fact that the defendant's cellar does not come out under the bay window change the situation. The bay window is a

part of the new dwelling and it has under it a part of the front foundation wall. Whether the prohibited thing was or was not to be also a cellar wall, did not enter into the consideration of the parties nor make any part of their agreement.

The extension of the defendant's front foundation wall under the bay window is a projection of that wall beyond the line of the front foundation wall of the complainant, and is to that degree a breach of the above-recited agreement of the parties. The situation of affairs under the peculiar limitations of the contract is such that, looking only to this phase of the case, it may be seriously questioned whether there should be a mandatory decree for the removal of this bay window foundation wall. The bill, the proofs and the arguments advanced by the complainant, all go to show that the substantial matter which he seeks is the removal of the defendant's bay window and the second story built upon it, because they obstruct his view, &c. Touching these structures there is no agreement and the contract above shown does not justify a judgment for their removal. If that part of the foundation wall under the bay window should be directed to be removed, it would not prevent the carrying of the superstructures upon posts or piers on the top of the ground, or by supports reaching from the cellar wall. The result of such a specific performance would be very injurious to the defendant. This consequence would not, however, control the action of the court if the defendant's breach were willful and uninvited, as the defendant may in such case be justly obliged to perform his contract according to its terms, notwithstanding the attending disadvantages. But such a decree would confer no benefit whatever upon the complainant. The thing he seeks is the razing of the bay window and its upper story, and this is not within the purview of the contract he has secured.

The defendant further contends that the complainant has no equity to claim relief by a decree requiring the removal either of the projection of the wall or its superstructure, because, as he insists, the complainant stood by knowing of the erection of the foundation wall under the bay window and of the superstructure built upon it, and gave no word of warning that he held these

to be breaches of the agreement until after the defendant had completed these structures, when their removal or change would work a destruction of the building.

The evidence indicates that the building of the foundation under the bay window by the defendant was in good faith, and under his belief that the front foundation wall located in the agreement, was the front wall of the cellar under the main building of the house. There was no attempt at hiding the fact that the defendant was putting a foundation wall under the bay window. The defendant's building was but a few feet from the lot of the complainant's residence, and there is evidence that on several occasions the latter looked at the new structure as it grew under the hands of the workmen, and some proof (contradicted, however, by the complainant) that he actually approved of the location of the walls while they were being erected.

The weight of the evidence shows that the complainant was cognizant of the location of the wall of which he now complains for several weeks before he made any objection, even by mailing the letter to the defendant, the receipt of which is denied. He saw the superstructure being built upon the mislocated foundation, but, as he says, did not make up his mind about the thing until he wrote the letter of August 22d. Meanwhile the bay window, &c., were substantially finished. There is no proof that the letter of August 22d was ever received by defendant, nor that any other attempt to notice him was made by the complainant, who several times saw the work which he now challenges, going on to completion. The bill in this cause was not filed until six weeks after the whole house had been entirely completed, and the effect of a decree for the removal of the wall, made at such a late day, will be to work a hardship to the defendant in a matter which, at the time of its happening, received the complainant's tacit approval, or at least was by him suffered to go on with his knowledge, and without protest or complaint, until the defendant was irretrievably committed to the course he had taken.

Under such circumstances equity will not decree the specific performance of the contract, even though the breach of it be

proved, but will leave the complainant to such remedy as he may have at law.

I will advise a decree that the bill of complainant be dismissed.

Under the peculiar circumstances of this case, I think neither party should recover costs against the other. The defendant was at fault in extending the foundation wall around under the bay window, and the complainant in omitting to take prompt measures of warning and asserting his rights, and in claiming more than his contract justified.