## WILLIAMS, Adm'r, &c., vs. CRUM.

[TROVER FOR CONVERSION OF A SLAVE.]

1. *Bailee of widow, before administration granted on her husband's estate, not liable for value of property to administrator subsequently appointed.*—If a widow hires out a slave belonging to the estate of her deceased husband, before administration granted, and the bailee returns it at the expiration of the term, in as good condition as when he received it, he is not liable in trover to an administrator subsequently appointed for the value of the slave and interest.

2. *Measure of damages.*—The general rule in trover, that the measure of damages is the value of the property at the time of the conversion with interest thereon, was adopted to give the plaintiff a full indemnity for the injury sustained by the defendant's wrongful conversion of his property, and to prevent the defendant from deriving any benefit from his own wrongful act; but there are cases to which this rule has no just application, and in which the equity of the case is allowed to mitigate the damages.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. NAT. COOK.

THIS action was brought by the appellant, as administrator *de bonis non* of John J. Funchess, deceased, to recover damages for the conversion of a slave named Patience, belonging to the estate of his intestate, and was commenced in March, 1853. The defendant pleaded, 1st, not guilty; and, 2d, the statute of limitations of six years. The plaintiff took issue on the first plea, and replied to the second, "that plaintiff's intestate died in 1835, in possession of the slave sued for, that the conversion was in 1837, and that no administration was granted on his estate until the fall of 1852."

On the trial, as the bill of exceptions states, "the plaintiff proved that his intestate emigrated to this State from South Carolina, bringing the said slave with him; that he kept possession of her until his death, which occurred in the spring of the year 1835, in the county of Lowndes, and that he died intestate; that said defendant got possession of said slave, and worked her on his farm in the year 1837; that she was worth six or seven hundred dollars; that no administration was ever granted on the estate of said Funchess until 1852,

when the administrator in chief resigned, and plaintiff was appointed administrator *de bonis non*."

The defendant then offered in evidence the deposition of Mrs. Eleanor Smith, who was the widow of said Funchess, and who testified, that she hired said slave to the defendant, for fifty dollars, during the year 1837; that defendant was unwilling to take the slave, and only took her to oblige witness; that he returned the slave to her at the expiration of the year, and paid her the hire; and that the slave afterwards died in her possession, in 1839 or 1840. "The plaintiff objected to so much of the evidence of this witness as went to show that she received said slave from the defendant at the expiration of the year 1837, on the ground that it was neither a justification nor mitigation of defendant's conversion of the slave, she not being administratrix; but the court overruled the objection, and plaintiff excepted."

"The court charged the jury, that at the death of Funchess, his widow was entitled to the custody and safe-keeping of the property until administration granted; and if they found from the evidence that defendant hired and received the possession of the slave from Mrs. Funchess, after her husband's death, and restored her to Mrs. Funchess at the expiration of the year, and before administration, in as good condition as when she was received, and that the slave was not injured while in his possession,—then they cannot find against the defendant the value of the slave, but the plaintiff is entitled to a verdict for the injury done by the temporary conversion of the slave, with the interest on such sum up to the trial."

To this charge the plaintiff excepted, and asked the court to charge the jury, "that if defendant used and worked said slave in 1837, this was a conversion, and returning the slave to the widow at the end of that year would not excuse him, as she was not the administratrix nor the owner; and that the verdict should be the value of the slave, with interest from the time of the conversion". This charge the court refused, and the plaintiff excepted.

The charge given, and the refusal to charge as requested, are now assigned for error.

THOS. WILLIAMS, for the appellant, cited the following

cases: Lawson's Adm'r v. Lay's Executor, 24 Ala. 184; Perminter v. Kelly, 18 *ib.* 716; Lee v. Matthews, 10 *ib.* 682.

GEO. W. STONE, *contra,* cited Sharp v. Ne Smith, 6 Rich. 31; Brown v. Beason, 24 Ala. 466; 1 Lomax on Ex'rs, 77.

RICE, J.—It is settled in this State, that a widow may maintain trover for personal property belonging to the estate of her deceased husband, of which she had possession several years after his death, when no letters of administration have been granted on his estate.—Brown v. Beason, 24 Ala. 466; Lowremore v. Berry, 19 *ib.* 130.

From this the necessary implication is, that the widow in such a case has a special property, which the law sanctions and protects. It also follows, that the widow of appellant's intestate could have maintained trover against Crum, if, after hiring the slave now in controversy from her in 1837, and after the expiration of the term of hire, he had refused to return the slave to her; no administration on the estate having been granted until 1852. The same law which conferred this right upon her as against Crum, cannot be so inconsistent and unjust as to declare, that by becoming her mere bailee, and holding under her until the termination of the bailment, and then restoring to her the slave in as good condition as when received by him, he became liable in trover to an administrator in chief of her deceased husband, subsequently appointed, for the value of the slave and interest thereon. Ward v. Bevil, 10 Ala. R. 197; Schley v. Lyon, 6 Geo. R. 530; Harker v. Dement, 9 Gill's R. 7.

We admit that, in this State, the general rule is, that the measure of damages in trover is the value of the property at the time of the conversion and interest thereon. But this rule was adopted to effect the great object for which trover was designed. That object is, to give to the plaintiff a *full indemnity* for the injury sustained by the *wrongful conversion* of his property by the defendant, and to prevent the defendant from deriving any benefit from his own *wrongful act.* The rule can only be justly invoked, or applied, for the purpose of effecting that object. There are exceptions to the rule, and cases to which it has no just application. In ascer-

taining the damages in many actions of trover, it is allowable to mitigate them, by investigating and determining what (for want of a phrase of greater accuracy) is called the equity of the case.—McGowen v. Young, 2 Stew. & Por. 160; Ewing v. Blount, 20 Ala. R. 694; Sharp v. Ne Smith, 6 Rich. R. 31; Schley v. Lyon, 6 Geo. R. 530; Pierce v. Benjamin, 14 Pick. R. 356; Hopple v. Higbee, 3 Zabriskie's R. 342.

If any error has been committed in this case, it was not against the appellant.    Judgment affirmed.