# Adams v. Birmingham Realty Co.

*Bill to Abate Nuisance on Public Street.*

(Decided Feb. 6, 1908. 45 South. 891.)

1. *Injunction; Laches; Acquiesence.*—To amount to an acquiesence in the doing of the thing complained of the failure to act must be with the knowledge of the condition, and a mere delay is not sufficient to deprive one of the right of injunctive relief.

2. *Same.*—Where the owner of the lot abutting on the street, and adjoining the lot on which the improvements were made, saw the plans for the building and a projection into the street, and commended rather than objected to the proposed improvement, and took no action looking to a removal of the projection until a year after the completion of the improvement, such owner of abutting property was estopped from maintaining a bill for mandatory injunction for the removal of the projection.

APPEAL from Jefferson Chancery Court.

Heard before Hon. ALFRED H. BENNERS.

Bill by A. A. Adams against the Birmingham Realty Company. From a decree granting insufficient relief, complainant appeals. Affirmed.

The case made by the bill is that complainant and respondent each owned a lot with buildings thereon fronting on First avenue, in the city of Birmingham, 25 feet each; that said lots and said building adjoin each other; that each of said buildings are two story brick buildings, and are built flush with the building line on said street;

that respondent has had certain improvements made to its said building which project out over the street 3 feet 5 inches, and consist of steps and approaches leading to said building, which are ornamented with lamp posts, stone side walls, and steps, all of the approximate height of from 4 to 6 feet. It is further alleged that complainant was the owner of his lot long before respondent made these improvements, and a long time prior to the erection and construction of said step, abutments, piers, or side walls upon said sidewalk. It is then alleged the sidewalk over which these improvements are erected is a public street and highway in the city of Birmingham, and that the said improvements and encroachment upon the public highway are a nuisance, permanent, continuing, and continuous in its nature, and not only infringe upon the right of the commonwealth of Alabama in the city of Birmingham, but upon the rights of this complainant, and are of great damage to complainant beyond that which is common to the public generally. The bill sets out these damages specifically, which are alleged to consist of damages to the value of the building and the cutting off of light, air, and view, etc. Respondent moved to dismiss the bill for want of equity, and filed demurrers thereto with its answer. This motion and these demurrers were overruled. The respondent also filed three pleas, the first and third of which were declared insufficient in law by the chancellor as an answer to the bill. The second plea was held good, and is as follows: "Respondent says that complainant, before and during the entire time that said building was being constructed by respondent, had his business office on First avenue diagonally across, and within 200 feet, and within full view of said respondent's lot and building; that complainant's attention was frequently called to the style

of building that was intended to be erected and the nature and character of the projection, and how the same would project over and upon the sidewalk; that before the said building was begun complainant examined the plan for said building several times, and that he acquiesced in the construction of the building as proposed, and encouraged respondent to construct this building in the manner in which it was constructed; that after the building had been partially erected, and the projections now complained of were almost completed, the municipal authorities of Birmingham were called upon by certain parties to prohibit the completion of said projections, about the month of October or November, 1904, and cause the removal thereof; that acting upon such request the municipal authorities of Birmingham did cause the work on said projection to be temporarily suspended. And respondent says that complainant condemned the action of the said municipal authorities in causing the suspension of the work on such projection, and repeatedly declared that such projections would not be obstructions to the street, but would enhance the beauty of the avenue and increase the value of the property adjoining, and that the same should not be interfered with; that said building was completed in the month of January, 1905, and complainant visited the same shortly after its completion, and thereafter many times each week from the time of the said completion until the filing of said bill of complaint, and with full knowledge of how said projections were made, and the effect thereof upon the avenue and upon the adjoining property, commended the construction of said building as it was constructed and approved of the projection." After testimony was taken, and upon final submission, the chancellor decreed that the lamp posts and globes thereon

[Adams v. Birmingham Realty Co.]

should be removed as an obstruction somewhat to the view of complainant's property, but declined to decree a removal of the stone abutment and approach.

J. T. GLOVER, for appellant. This case is on all-fours with the case of *Tyson v. First National Bank*, 32 South. 144 and 29 South. 560, and on the authority of that case, should be reversed. The permanent obstruction of a public highway, is as a matter of law, a public nuisance. —*Weiss v. Taylor*, 39 South. 519; *Gainor v. Bauer*, 39 South. 749; *Costello v. The State*, 18 South. 820; *First National Bank v. Tyson, supra; Schloss Co. v. Johnson*, 41 South. 909.

LONDON & LONDON, for appellee. Counsel discuss motion to dismiss the appeal, but as it is not touched on in the opinion, it is not here briefed. We respectfully submit that it is an established rule of equity founded upon conscience and good morals that a party who has long acquuiesced in the erection of works which he afterwards seeks to enjoin, as a nuisance, will not be granted relief. —1 High on Injunctions, sec. 756; 2 Storey's Eq. (12th Ed.) sec. 959a; 2 Pom. Eq. sec. 817; 4 Id. sec. 1359; *Burden v. Stein*, 27 Ala. 104; *Goetter v. Norman*, 107 Ala. 585; *Harrison v. Yerby*, 87 Ala. 185; *H. A. & B. R. R. Co. v. B. U. Ry. Co.*, 93 Ala. 505; *Knight v. Hallinger*, 42 Atl. 1045.

ANDERSON, J.—"It is a general rule that if a man, either by words or conduct, has intimated that he assents to an act which has been done, and that he will not offer opposition to it, although it could not have been lawfully done without his consent, and he thereby induces another to do that from which they might otherwise have abstained, he cannot question the legality of

the act so sanctioned, to the prejudice of those who have so given faith to his words, or to the fair inference to be drawn from his conduct."—2 Story's Eq. (13th Ed.) § 154; *Goetter, Weil & Co. v. Norman Bros.* 107 Ala. 596, 19 South. 56. And as said by Mr. Pomeroy in his work on Equity Jurisprudence (volume 2, § 817); "Acquiescence in the wrongful conduct of another, by which one's rights are invaded, may often operate, upon the principles of and in analogy to estoppel, to preclude the injured party from obtaining many distinctly equitable remedies to which he would otherwise be entitled. This form of quasi estoppel does not cut off the party's title, nor his remedy at law. It simply bars his right to equitable relief, and leaves him to his legal actions alone. In order that this effect may be produced, the acquiescence must be with knowledge of the wrongful acts themselves and of their injurious consequences. It must be voluntary, not the result of accident, nor of causes rendering it a physical, legal, or moral necessity, and it must last for an unreasonable length of time, so that it will be inequitable even to the wrongdoer to enforce the peculiar remedies of equity against him, after he has been suffered to go on unmolested, and his conduct apparently acquiesced in. It follows that what will amount to a sufficient acquiescence in any particular case must largely depend upon its own special circumstances. The equitable remedy to which this quasi estoppel by acquiescence most frequently applies is that of injunction, preliminary or final, when sought by a proprietor to restrain a defendant from interference with easements, from committing nuisances, from trespassers, or other like acts in derogation of the plaintiff's proprietary rights. This effect of delay is subject to the important limitation that it is properly confined to claims for

purely equitable remedies to which the party has no strict legal right. Where an injunction is asked in support of a strict legal right, the party is entitled to it if his legal right is established. Mere delay and acquiescence will not, therefore, defeat the remedy, unless it has continued so long as to defeat the right itself. The same rule applies, and for the same reasons, to a party seeking purely equitable relief against fraud, such as the surrender or cancellation of securities, the annulling of a transaction, and the like. Upon obtaining knowledge of the facts, he should commence the proceedings for relief as soon as reasonably possible. Acquiescence, consisting of unnecessary delay after such knowledge, will defeat the equitable relief." Again this same author, in discussing mandatory injunctions (volume 4, § 1359), says: "It should be observed, however, that no other equitable remedy is more liable to be defeated by acquiescence, or by delay on the plaintiff's part from which acquiescence may be inferred. The cases require of the plaintiff a promptness in objecting and in taking steps to enforce his objection, upon receiving notice of the defendant's structure or erections which are sought to be restrained, if the circumstances are such that the defendant would be unnecessarily prejudiced by the plaintiff's delay."

A mere delay is not sufficient to deprive a party of injunctive relief, as the failure to act must be with a knowledge of conditions that would amount to an acquiescence in the doing of the thing subsequently complained of. "When the injunction is sought to compel the removal of structures, walks, buildings, and the like, if the plaintiff knowingly permit the defendant to go on and incur any considerable further expenditure of money before he makes objection, he will generally lose his

[Adams v. Birmingham Realty Co.]

right to the somewhat special remedy of a mandatory injunction." Note on page 2699, 4 Pomeroy's Equity; 16 Cyc. 761; Herman on Estoppel, 1082, 1083, 1191-1193. In the case of *Knight v. Hallinger,* 58 N. J. Eq. 223, 42 Atl. 1045, there was an agreement between two parties that one about to build upon an adjoining lot, which he owned, would not extend the line of his front foundation beyond a certain line, which was the line of his neighbor's front foundation. Afterwards the first party built a bay window extending beyond the agreed line, and the other party stood by without objection until after the house was completed, and then filed a bill seeking to enforce the agreement. The court held that, having stood by without objection and seeing the house erected, he was not entitled to a decree for its rmoval. The cas of *First National Bank v. Tyson,* reported in 133 Ala. 459, 32 South. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46. and in 144 Ala. 457, 39 South. 560, while not unlike the case at bar in principle and fact, did not involve the doctrine of estoppel, which said defense seems not to have been urged and considered by the court. The third plea attempted an estoppel, but set up other matter rendering it bad for duplicity, and we hear nothing more of an estoppel as a defense after the plea was adjudged bad for duplicity. The court in no way considered this defense. Here the second plea was held sufficient, and it was established by the weight of the evidence. The complainant saw the plans of the building, had an office near where the work was going on, commended rather than objected to the projection, and took no action looking to a removal for a year after its completion, and not until after the agents of respondent sought to remove certain occupants from one of his houses.

The decree of the chancery court is affirmed.

TYSON, C. J., and DOWDELL and MCCLELLAN, JJ., concur.