## Crawford's Adm'r et al. v. Ross.

Feb. 13, 1945.

B. J. Bethurum for appellants.

Gladstone Wesley and W. R. Jones for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming in part, reversing in part.

The appeal is from a judgment in the sum of $4,750 in favor of appellee, C. I. Ross, against appellants, in an action instituted by Ross, and based upon an oral contract between him and Mrs. Kate S. Crawford, entered into in the year 1925. The action was instituted against Mrs. Crawford September 1, 1939. A demurrer was filed to the petition, but was not acted upon, nor was any answer filed until after the death of Mrs. Crawford in September, 1942, more than three years after the commencement of the action. After her death, the action was revived against appellants, Charles Adams, administrator of her estate, and Malcomb Staples, who succeeded to the title to the real property under the laws of descent and by deed executed by the only other heir of Mrs. Crawford. Appellants, by answer, denied the allegations of the petition, pleaded laches and the statute of limitations as bars to appellee's right to recover.

It is now contended: (1) The findings of the Master Commissioner and the judgment of the Court were excessive and flagrantly against the evidence; (2) the Court erred in giving judgment for certain services, because their performance was contrary to public policy; (3) recovery was permitted upon an implied contract, whereas the action was based upon an express contract; (4) the right of action was barred by the five year statute of limitation, KRS 413.120; (5) appellee's claim was barred by the doctrine of laches; and (6) the Court erred in sustaining the order of attachment.

Appellee introduced twenty-three witnesses whose testimony in the aggregate sustained his claim in every respect. He proved by these witnesses that he had entered into an oral contract with Mrs. Crawford in the year 1925, whereby he agreed to, and did, act for her as business adviser and manager. In pursuance of the contract, he looked after her real estate, consisting of farms, timber land, houses and lots; represented her before boards of equalization; collected rents; secured tenants; assisted her attorney by interviewing, conferring with, and procuring the attendance in court of, witnesses in various lawsuits, and advising with the attorney in Mrs. Crawford's place and stead. He made several trips out of the State to procure the attendance of witnesses upon the trial of four or five lawsuits in which Mrs. Crawford was interested; took the place of the litigant in assisting her attorney in the selection of jurors. In general, the evidence introduced by appellee shows that he acted as a very attentive and valuable business agent for her for a period of fourteen years.

The evidence for appellants contradicts appellee's evidence in a general way. It is insisted that appellants' evidence to the effect that no contract was made and Mr. Ross did not expect any compensation for the services he rendered Mrs. Crawford is so conclusive as to have required the Chancellor to enter a judgment to that effect. In this connection, attention is called to a deposition introduced in evidence given by Mr. Ross in one of the will contest suits, wherein he stated that he had acted as business adviser and agent for Mr. Crawford in his lifetime, without any agreement for, or expectation of, compensation for such services. This testimony does not militate against the claim of Mr. Ross against Mrs. Crawford, who had a separate estate from

that of her husband during his lifetime. Mr. Ross did not state in his deposition that he did not have a contract with, or expect pay from, Mrs. Crawford for his services to her, which constitute the sole basis of the claim sued on. Mrs. Crawford's separate estate was proved to have been worth between forty and fifty thousand dollars. In 1930 Mr. Crawford died, leaving an estate of approximately the same value, which he devised to his wife. The lawsuits hereinabove referred to were instituted by contestants of the will, and the litigation extended over a period of approximately eight years. Honorable Ben D. Smith, Judge R. C. Tartar, and Honorable Chris Tartar testified to the services rendered by appellee to Mrs. Crawford in defense of the lawsuits, and each credited Mr. Ross' activities with the success of the litigation. Mr. Smith estimated these services alone to be worth $2,500; Judge Tartar stated that in his opinion they were worth $5,000. But it is insisted that these services cannot be considered by the Court, because Mr. Ross' activity in this respect contravened public policy; that he was, in effect, practicing law without a license, and practicing law while serving as Circuit Clerk of the county in which the suits were pending, contrary to Section 110, Carroll's Kentucky Statutes, which reads: "The governor, or a judge of the court of appeals or circuit court, or clerk or deputy clerk of any court, shall not practice law or render any service as an attorney or counsellor-at-law, in any of the courts of this Commonwealth, except in such cases as he may have been employed in previous to his election, or in cases in which he may be personally interested."

We do not agree with this contention. The mere interviewing and procuring of witnesses to testify in favor of a litigant is a service which may be rendered by a layman, as well as an attorney; and where his compensation does not depend upon the outcome of the litigation, a contract to render such services does not contravene public policy; and, since it is not to be considered as practicing law, the rendition of such services does not contravene Section 110, supra. At the time appellee entered into the contract with Mrs. Crawford, he was not the Circuit Court clerk; and the mere fact that he afterwards became clerk did not require him to terminate his agreement with his employer. A contract to assist a litigant entered into by a circuit clerk no doubt would contravene public policy, because it would

be presumed that he was contracting the influence of his office for a monetary consideration; but one who is thus employed previous to becoming clerk, and for such a period of time previous thereto as to preclude such presumption, will not be required to terminate his employment by reason of entering upon the duties of the office. In the annotations to Duteau v. Dresbach, 16 A. L. R. 1435 and 1436, it is said:

"A contract by which one merely employs another to render services in looking up evidence to be used at a trial is valid, and it is immaterial whether the person employed is an attorney at law, a professional detective, or a mere layman. * * *

"An agreement by a layman to search for bona fide witnesses, and to hunt up such bona fide, competent, and legitimate testimony as he may be able to obtain, to be produced at the trial, is not invalid. Haley v. Hollenbeck, 1917, 53 Mont. 494, 165 P. 459. The court says plaintiff did not agree to furnish evidence that would establish defendant's claim, nor was he to have any portion of the possible recovery. No authority has been found which holds such a contract open to objection because it contravenes public policy. And it was held immaterial that the compensation was contingent on the success of the litigation. The court says it cannot be questioned that it was lawful for a litigant to employ a layman, at a stipulated compensation to be paid in any event, to do for him what he could do for himself— find the witnesses and ascertain the character of their testimony; * * *."

Authorities from numerous jurisdictions are cited in support of this text. At page 1437 of 16 A. L. R. the annotation recites: "Payment for services rendered in visiting another state and securing witnesses in a divorce suit is not illegal. Singer Mfg. Co. v. City Nat. Bank, 1907, 145 N. C. 319, 59 S. E. 72. * * *" We therefore conclude that the Court did not err in considering the evidence in respect to the services thus rendered Mrs. Crawford.

Neither can the contention that the judgment is excessive be upheld. The Court allowed $4,750 for services extended over a period of fourteen years. This amounts to approximately $340 per year. In Lancaster's Ex'r v. O'Brien, 136 Ky. 589, 124 S. W. 854, decided in the year 1910, upon a claim for services rendered prior

to the year 1902, the Court upheld an allowance of $350 per year for services which appear not to have been as extensive or as valuable as the services proven in this case.

In support of the contention that recovery was allowed upon an implied contract, whereas the suit was upon an express contract, it is argued that, if the Court should determine a contract had been entered into in the year 1925, the parties at the time did not anticipate the rendition of services in respect to lawsuits; and since that was not in contemplation of the parties at the time, recovery for such services must necessarily be had upon an implied contract. This argument overlooks the fact that such services were in pursuance of Mr. Ross' agreement to manage Mrs. Crawford's business generally; and, whilst it will be conceded that no particular lawsuit was in contemplation of the parties at the time of the making of the contract, nevertheless, the general scope of the agreement necessarily included such services if the need for them arose.

Neither is the plea of limitation available. Appellee introduced witnesses who testified that in the year 1925 they heard Mrs. Crawford and Mr. Ross enter into the contract; one witness who testified that in the year 1926 she heard Mrs. Crawford acknowledge the contract, two witnesses who in the year 1928 heard her acknowledge the contract to Mr. Ross and agree to pay him for his services. One witness testified that in the year 1930 she heard Mrs. Crawford promise to pay him for his services; two in 1934; one in 1936; and one in 1938. Other witnesses heard her state that she was indebted to him at various times throughout those years, although these witnesses testified that the statements were not made in the presence of Mr. Ross. Thus, the evidence shows that the new promises in 1928, 1930, 1934, 1936, and 1938 were made before the tolling of the five year statute of limitation; and each successive promise and acknowledgement of the contract made directly to appellee had the effect of extending the statute of limitation for a period of five years beyond the date of the promise. Since the last promise was made in the year 1938, and the action was commenced in the year 1939, the five year statute did not bar appellee's right to recover.

It is insisted that the plea of laches is available, and constitutes a complete bar to appellee's right to re--

cover. This contention is answered adversely in the recent case of Gover's Adm'r et al. v. Dunagan, 299 Ky. 38, 184 S. W. 2d 225, 227. Therein we pointed out that laches may be pleaded in respect to issues of which courts of equity have exclusive jurisdiction; but where the issue involved is a legal one of which courts of law have exclusive jurisdiction, or jurisdiction concurrent with courts of equity, as where "a legal right gets into equity", mere laches of a party constitutes no defense, and the plea in respect to lapse of time is controlled exclusively by the statute of limitations. A suit upon a contract is a common-law action; and this action was instituted upon the common-law docket. The case was transferred to equity, submitted to the Master Commissioner, and tried by the Court on exceptions to the Master Commissioner's report. Thus, it is a legal right which "got into equity", but of which a court of chancery does not have exclusive cognizance. Therefore, the doctrine of laches has no application; and, since the limitation prescribed by the statute had not tolled, the action was not barred.

The complaint in respect to the error of the Court in sustaining the attachment is well taken. Section 196 of the Civil Code of Practice provides that an attachment shall issue in an action of this character if an affidavit of the plaintiff be filed in the office of the clerk, showing the nature of the plaintiff's claim, that it is just, and setting forth the sum which the affiant believes the plaintiff ought to recover. The only affidavit appearing in the record is an amended petition verified by Mr. Ross on the 20th day of February, 1943. This pleading fails to state the nature of the plaintiff's claim, or that it is just, and likewise fails to state the sum the plaintiff believes he ought to recover. In construing Section 196 of the Code, we have held in numerous cases that affidavits for attachment which fail to allege either of the requirements above set out are fatally defective. One of the latest cases so holding is Cornett et al. v. Greever, 272 Ky. 241, 113 S. W. 2d 1127. It is apparent the Court erred in sustaining the attachment.

Wherefore, in so far as the judgment sustains the attachment, it is reversed; in all other respects it is affirmed.

Whole Court sitting.