71 So.2d 51

BRYANT

v.

DE KALB WAREHOUSE CO. et al.

7 Div. 209.

Supreme Court of Alabama.

March 11, 1954.

444

Harold T. Foster, Scottsboro, W. M. Beck, Fort Payne, for appellant.

C. A. Wolfes, Fort Payne, for appellees.

PER CURIAM.

This is an action at law stated in three counts by appellant against DeKalb Warehouse Company, a corporation, and W. B. Mitchell, individually. The first count is in trover for the conversion of four bales of cotton. The second is on an account for the same amount, and doubtless referring to the same four bales of cotton. The third is on an account which was shown to be a claim for hauling cotton at the instance of defendants. There was a jury and verdict with judgment for defendants, and plaintiff appeals.

The evidence showed that plaintiff was operating a cotton gin and defendant corpo-

ration was operating a cotton warehouse. Defendant W. B. Mitchell was one of the owners of its capital stock and bought cotton at retail. His brothers were the other stockholders.

Plaintiff's contention is that he had an agreement with the "Mitchell boys", operators of the warehouse, that he would haul bales of cotton from his gin to their warehouse, for which they were to pay him one dollar per bale. The cotton was owned by customers of the gin who had it ginned by plaintiff. Plaintiff decided to get a loan on the cotton from Commodity Credit Corporation for his customers. The procedure for handling the loan, as we interpret the evidence of plaintiff in connection with that of Mr. Bennett (the manager of the warehouse), was that plaintiff would haul the cotton belonging to his customers from his gin to defendants' warehouse, where it was weighed, sampled and classed, and a negotiable warehouse receipt was issued in the name of the producer. At the same time plaintiff would get a blank form which we will describe in detail. He would then get the producer to sign the note on that form, which was not filled out, and he would witness that signature. Later he would take that document so signed together with the cotton receipt indorsed by the producer back to the warehouse where it was filled out by Mr. Bennett from data on the classification card and the receipt and instructions from Commodity Credit Corporation fixing the amount of the loan value, with the warehouse company as payee. Mr. Bennett, acting for the warehouse company, would then return to plaintiff a carbon copy of the paper thus filled out and signed, giving him a check for the loan value thus ascertained, and indorse the instrument without recourse to Commodity Credit Corporation, and carry it to a bank and get that amount on account of Commodity Credit Corporation. The form consisted of (1) a *schedule of pledged cotton;* (2) an *agreement by the warehouseman;* (3) the *producer's note* (to be payable to the warehouseman at the office of Commodity Credit Corporation); (4) *Lienholders' waiver;* (5) *clerk's certificate;* (6) *payee's indorsement.* These were all printed on the face of one sheet of paper, on the back of which was printed much detail matter. The warehouseman was due to sign the agreement (No. 2, *supra).* The producer's note (No. 3) was to be filled out with the warehouseman as payee and signed by the producer. The clerk's certificate (No. 5) was signed by the manager of the warehouse, Bennett. The payee's indorsement (No. 6) was signed in the name of the warehouse company and purported to be by W. B. Mitchell, manager. Bennett signed Mitchell's name as manager with his authority, although Bennett was the manager. That paper with all those features seems to be what plaintiff meant by saying he would get the papers and receipt back to the warehouse. Plaintiff testified: "He (warehouseman) would give me the check, give it to me all in one check, then I would pay the customers". That plaintiff delivered four bales of cotton for which he was not paid. This cotton was owned by L. A. Dake, M. J. Bryant, L. R. Brooks and Noah (or Buck) Vaughn, a colored man.

Plaintiff testified that he paid those producers for the cotton before he took their papers, including the warehouse receipt, back to the warehouseman for the check from him. That he never received the money for those four bales of cotton. Plaintiff further testified that he afterwards went to Bennett seven or eight times to see about it, and the last time he said, "Here is your cotton (meaning in the warehouse), and nobody can get it." He also said he would not turn it out to anyone without a receipt for it.

The testimony for defendant tends to show that the four bales were "turned out" to those who claimed the cotton and presented the receipts. They were cotton buyers or textile owners, who were not examined as to how they received the cotton receipts and the evidence does not otherwise show. That when plaintiff complained about the cotton, Mr. Bennett told him that he (plaintiff) had never turned the receipts over to the warehouse, and being negotiable the warehouse could not deliver the cotton without the receipts. That he delivered the cotton only when the receipts were presented. But Bennett told plaintiff if he had lost

the receipt he could make a bond and get the cotton as provided by law. This plaintiff refused to do.

Plaintiff's theory, as we understand the brief, is that when he would return the receipt and loan paper to Bennett and he would fill out the blank Bennett would sometimes sign the name of the producer to the note and sign plaintiff's name as a witness to it, as well as sign for the warehouse the indorsement and then get the loan value from the bank and not pay him or the producer for the cotton. Or that if the cotton was purchased, the warehouseman received the receipt but did not pay the purchase price.

Defendants' evidence tended to show that the warehouse bought no cotton, but that Bennett bought cotton for defendant W. B. Mitchell, and signed Mitchell's name to a check for the purchase price in each instance, but that none of these four bales were purchased and the receipt for none of them was turned over to Bennett or Mitchell or the warehouse for a sale or for a loan.

■ It does not clearly appear whether plaintiff claims that a sale was made either to the warehouse or to Mitchell, or that Bennett put the cotton in the loan to Commodity Credit Corporation and did not pay plaintiff the amount received by Bennett from the Commodity Credit Corporation. There was no evidence to support the claim of conversion made in the first count.

■ As to the third count for hauling the cotton, defendants' evidence tended to show that plaintiff was paid for all the hauling up to a certain time when plaintiff was notified that defendant would not pay for any more hauling: that the claim is for hauling after that notice. Plaintiff's evidence tended to contradict that of defendant in that connection. There was therefore a clean cut issue for the jury and their verdict for defendant should not be disturbed in that respect.

Count 2 remains to be considered. To support that count plaintiff claims the amount of the loan or purchase price of the four bales of cotton and the value of one hundred pounds claimed to be short in another bale, for which the receipt was issued to Noah (Buck) Vaughn. As to the shortage, it seems that a receipt was first issued for 553 pounds. Plaintiff claims that a receipt for that amount was returned to the warehouse with an application for a loan, but that when the return was made it was for 453 pounds. A carbon copy of the application was offered (Exhibit 4) in evidence by plaintiff showing the weight of the cotton to be 453 pounds. Defendant claims that as originally issued there was a mistake and new receipt was issued for 453 pounds with the knowledge and consent of plaintiff, and the loan was properly based on that weight. Plaintiff denies such knowledge and consent. The jury found for defendants.

The first assignment of error relates to the action of the court in overruling plaintiff's objection to the question to Mr. Bennett by defendants' counsel as follows: "Now then, here is a ticket to M. J. Bryant, dated November 12, 1949, No. 33052, who did that go to?" (Meaning to whom was that bale of cotton delivered by the warehouse.) There was in evidence a classification card as to that bale, a cancelled warehouse receipt for it issued November 12, 1949, and stamped on the back of it "Released April 6, 1950, Commodity Credit Corporation". On the face of the receipt was stamped a memorandum "Cancelled", and another stamped impression on its face "Inspected June 30, 1950 State Department of Agriculture and Industries". There was also introduced in evidence by plaintiff a blank form for a loan from Commodity Credit Corporation, described above, signed by M. J. Bryant, witnessed by J. M. Bryant: not otherwise signed and none of the blanks filled in. M. J. Bryant is a different person from plaintiff. There is no dispute as to the signature on the blank form. Plaintiff produced it in court but does not explain his possession of it nor how it was handled.

■ In answer to the last above question the witness said: "That went to Otto Goedecke", who was a cotton buyer for Otto Goedecke Cotton Corporation. Plaintiff

was contending that he did not receive the loan value nor purchase price of that bale of cotton, which was one of the four bales in controversy. Defendant was furnishing what information it had as to that bale of cotton and it was material to the issues. Defendant made such proof without objection as to three of the bales of which plaintiff complains. There was no error in this ruling.

■ As to assignments of error 2, 3, 4 and 5: it was shown that a representative of the State Department of Agriculture and Industries checked the records of the warehouse against the cotton in it and the cancelled receipts. He stamped on the receipts "cancelled" and "inspected", and then he said "it is no good," can be destroyed, and the warehouse does not attempt to keep them. The witness Bennett was testifying on direct examination by defendant. Assignment No. 2 is that the court overruled an objection to the following question to Bennett: "You were there when the state man was there and checked your warehouse?" While this question was not answered, a similar question immediately preceding that had been answered in the affirmative. That question and answer alone were merely preliminary. Assignment of error No. 3 is of a similar nature. In assignment No. 4 the question is, "You do know?", his answer being "Yes, sir, I checked it with the state man there". Nothing prejudicial appears. In assignment No. 5, the question is, "What position does he (the state man) hold?", and his answer, "He is a state warehouse auditor." All that was shown by this evidence is that Bennett was present when the state auditor checked the warehouse receipts against the books. It was not attempted to show the result of that check, other than when he put the stamp on the receipts they were no good and could be destroyed. As to that no question is presented. We fail to find error in respect to those matters.

Assignments of error 6 and 7 relate to the same question. That is, whether there was error in sustaining defendants' objection to the introduction by plaintiff of exhibits 10 A, 10 B and 10 C. Those three exhibits were embraced in one offer by plaintiff. The objection was general. Those exhibits are carbon copies of a "cotton producer's note and loan agreement", such as we have previously described. The notes bear the signature of different producers seeking such a loan as here described, but not involved in this controversy. Those signatures purport to be witnessed by "J. M. Bryant". That is the name of plaintiff. Plaintiff's contention as to the admissibility of those exhibits is thus expressed in brief: "The testimony shows that neither the plaintiff nor the producers executed any contract involving the four bales of cotton, the basis of this suit, and the only way the plaintiff had in proving his case was by comparison of handwriting. The purpose of offering those documents was to compare them with the admitted signature of Mr. Bryant, the plaintiff, and these documents' were clearly admissible for that purpose. The plaintiff's exhibits offered, were admittedly filled out by the witness Bennett, who was manager of the warehouse and it was certainly relevant to admit these documents as they were the only admitted signature of witness Bennett, as he refused, as shown by assignment of error No. 7, to sign his name so we could have it for comparison."

■ The rule in that connection is that when a document, material to the issues, is before the court, and the controversy is as to whether the signature to it is genuine, the statute has changed the common law rule so as to admit the introduction of another document, not otherwise material but with a signature of the same person admitted or proved, for the purpose of comparison to shed light on the issue as to whether the controverted signature is genuine. Section 420, Title 7, Code; Ex parte Williams, 213 Ala. 145, 104 So. 44.

■ No such status here exists. Those documents are not admissible to support a theory that Bennett might have forged signatures in respect to the loans on the four bales of cotton here in controversy. There were no such controverted documents before the court.

■ Assignment of error No. 8 relates to the action of the court in overruling plaintiff's objection to the following question propounded by defendant to the witness Bennett: "Now then, I will ask you about putting DeKalb Warehouse Company on them." That inquiry specifically was shown by its context to refer to the fact that the cotton producer's note and loan agreement were required by the Commodity Credit Corporation to show where the cotton was stored in order to obtain the loan. That instrument also required an agreement by the warehouseman to store and handle the cotton in accordance with certain provisions printed on the back of it. It was contemplated that the warehouseman would be the payee of the note and indorse it without recourse to Commodity Credit Corporation. That was all proper evidence to show details of the procedure. It violated no principle of law prohibiting a change or contradiction of a written instrument by parol, as appellant's counsel contend.

Assignments of error 9, 10 and 11 are without merit and need no separate treatment.

■ Assignment 12 is for the refusal of charge X–1. This charge is predicated on a finding that the cotton was sold by plaintiff to defendants and he has not been paid for it. Whereas plaintiff testified that he "was going to sell it, but decided to put it in the loan". His testimony then is directed to that theory. There is nothing to show that the warehouse company and W. B. Mitchell, who are the defendants, or either of them, bought the cotton from plaintiff.

Assignments of error 13 and 14 are predicated on charges X–2 and X–3, refused to plaintiff. They charge affirmatively that if the jury believe the evidence the defendant warehouse company cannot recover on plea 4 in charge X–2, and on plea 5 in charge X–3.

■ There is no question here raised as to the sufficiency of pleas 4 and 5. The general issue to the common counts puts in issue every fact necessary to entitle plaintiff to recover. Denson v. Kirkpatrick Drilling Co., 225 Ala. 473, 144 So. 86. And under it defendants may prove any matter showing that plaintiff never had any cause of action or that he ought not to recover. Shannon and Co. v. McElroy, 3 Ala.App. 519, 57 So. 118; Ivy Coal & Coke Co. v. Long, 139 Ala. 535, 36 So. 722; Singer Sewing Machine Co. v. Teasley, 198 Ala. 673, 680, 73 So. 969. Pleas 4 and 5 merely undertake to set up matter thought to be inconsistent with plaintiff's cause of action in counts 2 and 3 (the common counts). If the facts there alleged are true, and are inconsistent with plaintiff's claim on an account, plaintiff has not proven that defendants are indebted to him as there alleged. And in respect to count 1 (in trover), the general issue puts in issue all the material allegations of that count. Under it evidence is admissible of any available defense except a release. Kelley v. Cassels, 226 Ala. 410, 147 So. 597; First National Bank v. Burnett, 213 Ala. 89, 104 So. 17.

■ The charges in question might just as well have directed the jury that if they believe the evidence defendant cannot recover on the pleas of the general issue. Those charges are misleading and properly refused.

Assignment of error No. 15 relates to the refusal of the court to grant plaintiff's motion for a new trial. Appellant's counsel observe in their brief that this is predicated on the same argument and legal propositions which apply to the other assignments. Finding no error in them, there was none in overruling the motion for a new trial based on them.

We have not discussed some of the assignments because we think they are obviously without merit.

The judgment should be affirmed.

· The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the ·Chief Justice under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Affirmed.

·LIVINGSTON, C. J., and SIMPSON, GOODWYN and MERRILL, JJ., concur.