96 So.2d 728

## G. E. BALLENGER

v.

## ·LIBERTY NATIONAL LIFE INSURANCE COMPANY.

## 6 Div. 73.

Supreme Court of Alabama.

June 20, 1957.

Rehearing Denied Aug. 22, 1957.

Francis Hare and Sirote, Permutt, Friend & Friedman, Birmingham, for appellant.

Frank E. Spain, Ira L. Burleson, Ralph B. Tate and Spain, Gillon & Young, Birmingham, for appellee.

SIMPSON, Justice.

G. E. Ballenger, on February 4, 1955, sued Liberty National Life Insurance Company for the conversion by it of certain shares of stock allegedly owned by the plaintiff, claiming $250,000 as damages. The complaint alleged that plaintiff was one of the incorporators of J. N. Brown Burial Benefit Association, Inc. (incorporated in 1925 or 1926) owning one share of stock, which company through successive name changes and transfers, became Brown Service Insurance Company, Inc., which latter named company merged with Liberty National Life Insurance Company in 1944. The complaint alleged that in 1954 plaintiff made a demand upon the defendant as the consolidated corporation for the issuance to him of a certificate evidencing his ownership of the share of stock in the defendant organization resulting from increased value of the corporation, stock splits, and the merger of the said corporations. The complaint also alleged that in January, 1955, plaintiff made a demand upon the defendant for the payment to him of any dividends which had accumulated to his credit, and that the defendant refused to comply with these demands. Hence this suit.

This, of course, is an action at law on a purely legal claim and the defendant as its initial pleading interposed demurrers to the complaint.

Thereafter, the defendant filed a motion to transfer the cause to the equity side of the docket pursuant to the provisions of § 153, Title 13, Code of 1940, alleging that it had equitable defenses to the action which could not be disposed of on the law side of the court and which would dispose of the case if transferred to equity. The court granted the motion. The defendant then filed its bill in equity alleging certain defenses to the action including the defense of laches. The plaintiff (respondent in equity) demurred to the bill of complaint alleging, among other things, that it contained no equity, that there was an adequate defense at law, and that no equitable defenses were properly interposed. The trial court overruled this demurrer and the plaintiff brings this appeal.

The bill in equity claimed that it had several defenses which could not be interposed at law which would dispose of the case. The pleadings indicate that the several defenses to be interposed by the defendant are the general issue, the statute of limitations of 1, 3, 6 and 10 years, prescription, negligence in failing to assert his claim and demand a certificate until the rights of third parties intervened, equitable estoppel and laches.

It is the contention of the plaintiff-appellant (respondent in equity) that all of these defenses except laches could have been properly pleaded in the action at law, and that laches is no proper defense to such a claim, viz.: That the bill of complaint was not sufficient to give the equity court jurisdiction to consider the defense of laches. We agree with the contention of the appellant.

■ It needs but little comment or citation of authority to demonstrate that all of the defenses (not now considering laches) could have been interposed to the action at law. The plea of the general issue to an action of trover puts in issue every matter, except release, which might show the plaintiff never had a cause of action or that he ought not to recover. Kelley

v. Cassels, 226 Ala. 410, 147 So. 597; First National Bank of Gadsden v. Burnett, 213 Ala. 89, 104 So. 17; Bryant v. De Kalb Warehouse Company, 260 Ala. 443, 71 So.2d 51.

■ Prescription may be properly pleaded to an action at law as well as in equity. Oxford v. Estes, 229 Ala. 606(6), 158 So. 534.

And the defendant may also take full advantage of the statutes of limitation in law as well as in equity. § 31, Title 7, Code of 1940; § 18, Title 7, Code of 1940.

■ Equitable estoppel may also be pleaded at law to this purely legal claim. As was observed in State ex rel. Martin v. City of Gadsden, 216 Ala. 243, 247, 113 So. 6, 9:

"It is suggested that equitable estoppel—that is, estoppel in pais—may not be allowed to operate in this proceeding at law; but that estoppels in pais are, in general, available as well at law as in equity, is the established doctrine of this court, the only estoppels available in equity, but not at law, being such as grow out of titles to land, which are required to be in writing, or depend upon peculiar relations cognizable in equity only. Wefel v. Stillman, 151 Ala. 249, 44 So. 203; 5 Mich.Dig. 711."

See also Watt v. Lee, 238 Ala. 451, 191 So. 628; Kelley v. Cassels, supra; Bigelow on Estoppel, 5th Ed. 557; 15 Words and Phrases, Equitable Estoppel p. 59, Estoppel in Pais, p. 738.

Appellee cites Garrett v. Moody, 234 Ala. 113, 173 So. 504, to sustain his contention that estoppel in pais can only be pleaded in equity. There the court was merely considering the principle of estoppel and the rescission of a transaction by which mortgages were surrendered because of failure of consideration, matters of which equity of course can take cognizance (syl. 2). The propriety vel non of the order of transfer from law to equity was not considered on that appeal. (syl. 1, p. 114 and 505 respectively).

**410**

Clearly, therefore, the bill was without equity unless the defendant at law is permitted to have the cause transferred to equity under the statute in order that it may plead laches. On a careful study of the governing authorities, we have concluded that the bill was without equity on this ground also.

■ Laches is an equitable principle and is a defense only to suits in equity. City of Anniston v. Dempsey, 253 Ala. 597, 45 So.2d 773; Hamilton v. Watson, 215 Ala. 550, 112 So. 115; Courson v. Tollison, 226 Ala. 530, 147 So. 635; Oxford v. Estes, 229 Ala. 606, 158 So. 534; Meeks v. Meeks, 245 Ala. 559, 18 So.2d 260; or to those proceedings at law which are controlled by equitable principles such as mandamus. City of Anniston v. Dempsey, supra. It is a creature of equity and is not controlled by statute. Moss v. Davitt, 255 Ala. 513, 52 So.2d 515.

■ There is competent authority elsewhere based on unassailable rationale holding that where the issue involved is a legal one and does not lie within the breast or conscience of the chancellor the statute of limitation is the applicable rule and the defense of laches may not properly be interposed. Gover's Adm'r v. Dunagan, 299 Ky. 38, 184 S.W.2d 225; Crawford's Adm'r v. Ross, 299 Ky. 664, 186 S.W.2d 797. In the Gover's Adm'r v. Dunagan Case, the administratix sued to recover under a claim evidenced by a written promissory note. The basis of the suit was a new promise to pay the note made fifteen years after the notes had become due. The answer plead payment and a fifteen year statute of limitation and by amendment the answer further plead laches. The suit was originally begun in equity and a demurrer was sustained to the plea of laches and the case transferred to law to determine the validity of the debt. The appellant assigned as error, among other things, the sustaining of the demurrer to the plea of laches. The appellee contended that since laches was of strictly equitable cognizance the demurrer was prop-erly sustained. The court held that where the issue involved is a legal one and does not lie peculiarly within the cognizance of equity, statutes of limitation rather than laches apply. We quote from that case [299 Ky. 38, 184 S.W.2d 226]:

"The doctrine of laches has been defined to be such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less extensive, and other circumstances causing the adverse party to be prejudiced, operates as a bar to the petitioner's right to recover in a court of equity. In respect to issues of which courts of equity have exclusive jurisdiction, where the enforcement of the claim depends upon the conscience of the chancellor, equity may refuse relief by applying the doctrine of laches, even though the claim be not barred by the statute of limitations. * * * But where the issue involved is a legal one and does not lie within the breast or on the conscience of the chancellor, the statute fixing the limitation establishes the rule to be applied, and the defense of laches may not be interposed. * * *

"On issues of which courts of equity and courts of law have concurrent jurisdiction, the statute of limitations will be applied by the court of equity precisely as it operates at law. Lexington Life, Fire & Marine Ins. Co., etc. v. Page, 56 Ky. 412, 453, 17 B.Mon. 412, 453, 66 Am.Dec. 165; Vansant's Ex'x v. Gardner's Ex'x, 240 Ky. 318, 42 S.W.2d 300. The rule in respect to issues of which the courts of law and courts of equity have concurrent jurisdiction is clearly and succinctly stated in Pomeroy's Equity Jurisprudence, 5th Ed., vol. 2, § 419e, pp. 180 and 181, which reads: 'It is frequently held that where a legal right is involved, and, upon ground of equity jurisdiction, the courts have been called upon to sustain the legal right, the mere laches of a party, unaccompanied by circum-

stances amounting to an estoppel, constitutes no defense. As has been expressed, "if a legal right gets into equity, the statute governs." Accordingly, it is held that if the statute might be pleaded by the defendant, the equity court will hold the suit to be barred. On the other hand, if the statutory period has not run, the suit will not be barred; the statute of limitations rather than the doctrine of laches is applicable. If, however, the cause is one of which courts of chancery take exclusive cognizance, the statute will not necessarily be applied.' "

In the later case of Crawford's Adm'r v. Ross, supra, the Kentucky Court in reaffirming the holding in Gover's case, extended the rule to govern the defense of laches pleaded in equity. There the action was on an oral contract entered into in the year 1925. Suit was instituted in 1939, and was pending until 1942, when it was revived against the administrator of the original defendant. The action was initiated at law but was subsequently transferred to equity. Laches was pleaded as a defense to the action. The court, adopting the holding in Gover's case, further held that while laches may be pleaded in respect to issues of which courts of equity have exclusive jurisdiction, where the issues involved are strictly legal or where courts of law and courts of equity have concurrent jurisdiction, as where "a legal right gets into equity," laches of a party constitute no defense and the plea in respect to lapse of time is controlled by the appropriate statute of limitation. In essence, the holding was that the case presented merely a legal right which got into equity and that laches was unavailable as a defense but the statute of limitations controlled. Thus the court rationalized [299 Ky. 664, 186 S.W.2d 800]:

"It is insisted that the plea of laches is available, and constitutes a complete bar to appellee's right to recover. This contention is answered adversely in the recent case of Gover's Adm'r v. Dunagan, [299 Ky. 38] 184 S.W.2d 225, 227. Therein we pointed out that laches may be pleaded in respect to issues of which courts of equity have exclusive jurisdiction; but where the issue involved is a legal one of which courts of law have exclusive jurisdiction, or jurisdiction concurrent with courts of equity, as where 'a legal right gets into equity', mere laches of a party constitutes no defense, and the plea in respect to lapse of time is controlled exclusively by the statute of limitations. A suit upon a contract is a common-law action; and this action was instituted upon the common-law docket. The case was transferred to equity, submitted to the Master Commissioner, and tried by the Court on exceptions to the Master Commissioner's report. Thus, it is a legal right which 'got into equity', but of which a court of chancery does not have exclusive cognizance. Therefore, the doctrine of laches has no application; and, since the limitation prescribed by the statute had not tolled, the action was not barred."

The principle enunciated by the Kentucky Court impresses us as being thoroughly sound. Therefore, the issue now under consideration is, we think, ruled by the stated principle. A claim for conversion is a legal one cognizable at law, with the result that the defense of laches may not be applied, even though the claim "got into equity" under the removal statute. If the contrary view should be upheld, untoward illogical consequences would obtain. It would be purposeless to multiply the many ridiculous illustrations, but it is conceivable that under such a view most all actions at law could be moved into equity so the defendant could plead laches and thereby subvert the right of trial by jury and operation of the applicable statute of limitation.

While our court has not written to the exact point, the trend of our decisions would lead to the same conclusion attained by the Kentucky Court. As was stated in Taunton v. Trammell, 254 Ala. 252, 48

So.2d 190, 192, quoting from Adams v. Birmingham Realty Co., 154 Ala. 457, 45 So. 891, 892:

"Acquiescence in the wrongful conduct of another, by which one's rights are invaded may often operate, upon the principles of and in analogy to estoppel, to preclude the injured party from obtaining many distinctly equitable remedies to which he would otherwise be entitled. This form of quasi estoppel does not cut off the party's title, nor his remedy at law. It simply bars his right to equitable relief, and leaves him to his legal actions alone."

By analogy, this latter case and other Alabama cases, which, while not directly holding that laches is no defense to a legal cause of action, have indicated that laches is only a bar to an effort to enforce a stale equitable demand. " * * * if the case, * * * is open to objection by reason of the laches of the complainant, the court will, upon that ground, *be passive, and refuse relief*." Sweeney v. Sweeney, 210 Ala. 593, 594, 98 So. 883, 884. "Laches is not like limitations, a mere matter of time, but principally a question of *inequity of permitting a claim to be enforced*, and, when this inequity exists, a court *will refuse relief*, * * *. Laches alone is sufficient *to bar* equitable relief, * * *." Gayle v. Pennington, 185 Ala. 53, 68, 64 So. 572, 577. "Laches, * * * does not, like limitation, grow out of the mere passage of time, but it is founded upon the *inequity of permitting* the claim to be enforced * * *." Hauser v. Foley & Co., 190 Ala. 437, 441, 67 So. 252, 253. (Emphasis supplied)

■ It must necessarily follow that since courts of equity have used this doctrine of equity to refuse to grant relief to parties guilty of laches, and further since courts of equity have refused to take jurisdiction of a legal demand because of laches, a party cannot ask equity to take jurisdiction of a controversy and then assert an inconsistent theory which would deprive the court of jurisdiction. Hamilton v. Watson, supra. This is what appellee seeks to do.

■ It is true, as stated in our cases, that trover in some respects is an equitable action. Shriner v. Meyer, 171 Ala. 112, 55 So. 156. But that does not mean that it is of equitable cognizance within the meaning of the term applied to the defense of laches. In actions of trover it is sometimes competent to investigate and determine the equity of the case. The equitable aspect of an action of trover usually arose out of the determination of damages, in early mortgage cases. It was and still is necessary for courts of law, in order to grant just relief, to consider the action in the light of an accounting, to determine the actual amount of damages suffered by a party, rather than award him, as the action at law would indicate, the value of the property at the time of the conversion. Thus the oft used loose statement that trover is an equitable action. This equitable nature of trover was explained in the early case of McGowen v. Young, 2 Stew. & P. 160, beginning at page 170, as follows:

"[Trover] is an action for the recovery of *damages* for the wrongful *conversion* of *personal* property. As a general rule, the measure of damages, in trover, is the value of the property, when converted, with interest thereon, by way of damages, till the trial; but to this, there are many exceptions. If the conversion was temporary; if the plaintiff was but part owner; or, if he, notwithstanding the conversion, derived partial benefit therefrom, such benefit will go in mitigation of the damages. * * *

"The action of trover, therefore, appears competent, in many respects, to investigate and determine the equity of the case. To allow a mortgagee the right of the action of trover, against the mortgagor, or any holding under him, with the right to recover the full value of the property, regardless of the amount of the debt, would be to sustain a doctrine, involving the

apparently absurd consequences; that, notwithstanding, the mortgage was intended alone to secure the debt; and, that the mortgagee found it necessary to sue, in order to effect the intent of the mortgage; that, yet the mortgagee must necessarily recover the full value of the property, and damages for the conversion; and the mortgagor must be driven to the necessity of seeking relief, against the excess, by suit in Chancery. That such is, (according to the principles of the common law) the nature of the action of debt, does not prove it to be so in the action of trover; because the latter is not of the rigid, unwieldy character of the former action, but is competent, like the action of assumpsit, to administer justice between the parties, according to the rules of equity, without a subsequent resort to Chancery.—In trover, I hold the court competent to investigate the justice and equity of the case, in a similar manner, and on similar principles, to those by which courts of law will sustain the defence of partial failure of consideration, when an action may be brought at law to recover the purchase money."

Therefore, for want of a better phrase, the courts have resorted to calling the ascertainment of damages, by showing mitigating circumstances, the equity of the action of trover. Williams v. Crum, 27 Ala. 468.

■ So, to recapitulate—Not only do principles of law operate to prevent the transferring of a cause to equity to plead the defense of laches when there is an appropriate statute of limitation applicable, but the rule of reason as well. If it were held by this court that a party, under the removal statute, supra, could cause a case to be transferred to equity on the basis of the doctrine of laches, then courts of law would have little, if any, authority to settle those controversies which are inherently theirs. If this rule were adopted, a party, disregarding any legal defense specified by the laws of this state, pleading that he had no adequate defense at law, but that if he were allowed to go into equity under the transfer statute he could obtain relief by putting forth a good defense of laches, could carry any case into equity and there litigate the matter in disregard of the statute of limitation and without the right of the opponent to a jury trial. This would be a practical divestiture of courts of law of all controversies of a legal nature and vest in courts of equity jurisdiction to try those cases which should be tried at law.

■ Since the bill of complaint of the appellee contains no equity, the trial court was in error in overruling the demurrer of the appellant. 2 Ala.Dig., Equity, ⟲232. Therefore, the decree of the lower court is reversed and the cause remanded with direction to retransfer the cause to the law side of the docket.

Reversed and Remanded with directions.

All the Justices concur.

On Application for Rehearing

In view of the seeming earnestness of able counsel for appellee and the novelty of the question treated, we will respond to the application for rehearing.

The essence of our holding is: "A claim for conversion is a legal one cognizable at law, with the result that the defense of laches may not be applied". Several out of state cases are cited in the rehearing brief which are thought to be contrary to this conclusion. A brief analysis of these cases will disclose that they are in no way controlling upon the question considered under the Alabama transfer statute.

The case of Pottsville Bank v. Minersville Water Co., 211 Pa. 566, 61 A. 119, 123, is not in point because Pennsylvania had no system of equitable jurisprudence. The court there observed: " * * * In our State, the doctrine is firmly established that equity is administered through common-law forums * * *".

The Gold Mining case, Valley View Consol. Gold Mining Co. v. Whitehead, 66 Colo. 237, 180 P. 737, 739 next cited by appellee, was instituted in a court of equity in which the plaintiff sought to have an equitable title converted into a legal title, and the court stated: "Having thus treated the cause as one of equitable cognizance, the plaintiff cannot now change her ground and deny the right of Defendant to the benefit of an equitable defense."

The Federal cases cited in the rehearing brief are likewise inapplicable. Indeed, the decision by the United States Supreme Court in Wehrman v. Conklin, 155 U.S. 314, 15 S.Ct. 129, 133, 39 L.Ed. 167, seems to support the theory advanced in our original opinion. There the action was in a court of equity to quiet title to real estate and enjoin an action at law in ejectment. As we read the opinion it definitely does not hold that the court allowed laches to be a defense to an action of ejectment. The court stated:

"It is scarcely necessary to say that complainants cannot avail themselves as a matter of law of the laches of the plaintiff in the ejectment suit. Though a good defense in equity, laches is no defense at law. If the plaintiff at law has brought his action within the period fixed by the statute of limitations, no court can deprive him of his right to proceed. If the statute limits him to 20 years, and he brings his action after the lapse of 19 years and 11 months, he is as much entitled as matter of law to maintain it, as though he had brought it the day after his cause of action accrued, though such delay may properly be considered by the jury in connection with other facts tending to show an estoppel. As was said by Chancellor Green in Horner v. Jobs, 13 N.J.Eq. 19, 23: 'Nor can the staleness of the claim, or the lapse of time, or the statute of limitations, avail the complainant. The defendant is asking no relief at the hands of this court. He is seeking to enforce his legal rights in a court of law. The complainant is here asking the aid of this court. It is the claim of the complainant, not the title of the defendant, to which the equitable defense of a stale claim is applicable. No lapse of time can avail the complainant, unless it be a bar to the defendant's title under the statute of limitations. This defense will avail the defendant at law as well as in equity, and constitutes no ground for enjoining proceedings at law.' Had Wehrman seen fit to resort to a court of equity in assertion of his rights, undoubtedly the defendants to such suit might have interposed the defense of laches, but it is quite a different question whether it could be made the basis of a bill. It may, however, be considered as one of the facts of the case tending to show an estoppel." (Italics ours).

Wall v. Harris, 90 Miss. 671, 44 So. 36, is next cited by appellee to support his contention that laches is an available defense to an action of ejectment. There the mortgagee of lands became the purchaser at an irregular foreclosure sale, crediting the amount of his bid on the note evidencing the indebtedness and continued in the peaceful possession for eight years. After the statute of limitation barred the note, the mortgagor instituted an action of ejectment to invalidate the sale. Thereupon the mortgagee instituted an action in a court of equity conceding the sale to have been irregular, but claiming that he, as a mortgagee in possession, was entitled to hold the land until the indebtedness was paid. The court very properly enjoined the further prosecution of the ejectment suit, ordered an accounting between the parties, and directed payment of any balance that may be due on the note and decreed that upon failure so to do, the land should be sold for the payment of the mortgage debt. The Supreme Court of Mississippi held:

"We apprehend that no court would permit the grantors in a trust deed under the circumstances set forth in

this bill, to stand quietly by for eight years, with the beneficiary peaceably in possession, and wait until the note which the trustee secured became barred by limitation, and then take the land free from the obligation of any of the debt and with rents and profits."

We cannot construe this case as supporting the appellee's claim that the defense of laches may be interposed to an action of ejectment.

Baker v. Langley, 247 Mass. 127, 141 N.E. 671, 672, was an action to recover bank deposits of a deceased seaman in settlement of an account for board and lodging. The plaintiff also sought delivery of the bank book and the court stated: "Having acquired jurisdiction for one purpose (the court) will retain it for any purpose within the scope of the bill". The court also pointed out:

"The estate of the intestate should not be put to the same expense, nor its settlement delayed, nor the ends of justice defeated by the further prosecution of the case at law in *which no substantial living cause of action exists.*" (Italics ours).

Appellee also cites Ford v. Huff, 5 Cir., 296 F. 652, holding that laches is a defense to an action at law for damages for patent infringement. However, this and other Federal cases were decided under the now obsolete provisions of Section 274b of the Federal Judicial Code, under which the distinction between legal and equitable actions, was substantially abolished, and under which an action at law was subject to the instituted in a court of equity. Procedure defense of laches, as if the action had been under that old section required the trial of equitable issues as in a court of equity, but preserved the right of trial by jury on the legal issues, all in the same action. Banker v. Ford Motor Co., D.C., 3 F.Supp. 737. These Federal cases and others not necessary to discuss, as well as cases from other State Supreme Courts, present no analogy to our removal statute, which in no way abolishes the distinction between the legal and equitable causes of action.

We are firm in our opinion that the conclusion reached on original deliverance is sound.

Application for rehearing overruled.

All the Justices concur except STAKELY, J., not sitting.