Case 10.

ORD. PET.

## Taylor *vs.* Smith.

APPEAL FROM ANDERSON CIRCUIT.

1. A party purchased several slaves and paid the price, took one of them away with him, and was to return the next day with a vehicle to remove the others: Held, that thus leaving the slaves with the vendor was not fraudulent; it gave to the vendor no delusive credit.

2. An affidavit to obtain an attachment should state that affiant believes the debt sued for to be just. *Quere.* Could the affidavit be amended after the levy of the attachment?

[The facts of the case are given in the opinion of the court.—REP.]

*T. N. Lindsey* for appellant—

The proof in this case of the purchase of the slaves by Taylor, and his payment of the price, is clear, and there is no proof that he had any knowledge of any fraudulent intent on the part of Menzies. The only proof in any degree tending to show any fraud, is the statement of McBrayer, who states that he offered to buy of Menzies his farm and some of his negroes, and pay him with the note sued on, when he replied that he must make provision for his home debts first.

After the proof was heard Menzies moved the court to discharge the attachment, because the affidavit did not state that "plaintiff's claim was just." The affidavit was amended by stating "that defendant had fraudulently sold and conveyed the negroes, and remained in possession of them when the attachment was issued."

We insist that the attachment should have been discharged. (See *Code of Practice, section* 222, *subsection* 4.) And it was erroneous to permit the amendment of the affidavit to sustain an attachment after it was issued and levied.

The court erred in not trying the questions made on the attachment. An issue was made, and it was

the province of the court to try and decide it. (*Talbot vs. Pierce*, 14 *B. Monroe*, 201.)

According to plaintiff's own showing, by the amended affidavit, he had knowledge of the sale of the slaves before suing out his attachment; in such case he cannot contest the sale unless after judgment at law.

The rule that it is fraudulent for a vendee, by absolute sale, to permit property to remain with the vendor, has exceptions. (See *Bull vs. Caldwell*, 4 *Bibb*, 458 ) And this case should form an exception, as it does not come within the reason of the rule. (See also *Willis vs. Willis' adm'r*, 6 *Dana*, 49.)

The court should not have rendered judgment against Menzies' administrator until the affidavit required by the Revised Statutes, (*page* 344,) had been filed.

*J. D. Hardin* for appellee—

Three questions arise in this case—1. Was the grounds, as proved, sufficient to authorize the issual of the attachment? 2. Was the attachment properly sued out? 3. Were the two slaves, Alice and General, subject to the attachment? It is believed by appellee's counsel that each of the foregoing questions should be answered affirmatively. In respect to the first the proof is, that William Menzies, one of the obligors, is a non-resident, and that Thos. P. Menzies, the other obligor had declared his intention to sell off his property to evade the payment of the debt sued for. That he had sold his land and all his slaves, except the two levied on and the negro woman, and leaving some personal property not more than sufficient to pay plaintiff's demand, and was trying to secrete and sell all; and was, moreover, greatly involved, and that most of his property had been sold to his brothers-in-law. These facts authorized the issual of the attachment.

2. It is true the affidavit does not state that "the debt is just." And after the plaintiff concluded his

proof appellant moved that the attachment be discharged, which was overruled by the court, and, as we insist, properly—1. Because the suit was brought upon a plain promissory note, showing the amount, date, and when due; and the justice of the demand was not put in issue by the answer. 2. The affidavit was in all other respects as required by the Code of Practice. 3. The proof showed the justice of the demands sued for before any motion was made to quash the attachment.

3. The slaves were liable to the attachment; they were the property of the defendant, Thos. P. Menzies; and though it may be true that he did execute a bill of sale for them to his brother-in law, on the 29th of August, 1855. and received the price, yet the slaves were not delivered and removed. but left in possession of Menzies, the vendor, and found in his possession when the attachment was levied, and where they had been left by the vendee, which was fraudulent as to creditors and purchasers, as is well settled. (See 3 *Dana,* 134; *Ib.*, 519; 2 *B. Monroe,* 298; 8 *Ib.*, 11.)

The proof shows the plaintiff was a creditor. The bill of sale introduced by defendant shows the sale was absolute. The slaves could have been removed. The vendee lived in another county. The rule insisted on is a salutory rule, and this is a very suitable case for its application.

An affirmance of the judgment is asked of this court.

*W. W Penny* on the same side—

1. It is a well established principle that where there is an absolute sale of personal property, and the possession is suffered to remain with the vendor, that it is fraudulent. This is a rule almost inflexible. It is not pretended that the vendee in this case ever removed or attempted to remove the slaves levied on. The effort is to make out an apology for not removing them; and the proof, so far from doing

that, shows that they might have been removed with the means which the vendee had at his command, when he did remove one (a negro woman,) at the time of his purchase. the two on which the attachment was levied. The rule is not so flexible as to give way on account of the fact that it was inconvenient to remove the slaves when purchased, and the instructions of the court were in accordance with the law. (See *Hundlcy vs. Webb*, 3 *J. J. Marshall*, 644–653.)

2. The proof shows that Menzies was in failing circumstances. He had sold his farm to another Taylor, his brother-in-law also, sometime before, of which he still kept possession, and of which his family still retain the possession. He sent for Taylor to Louisville to come and buy his slaves. When the officer went to levy the attachment he denied that there were any slaves there, but they were found there secreted. Why this shuffling if all was intended to be fair? There was certainly ample ground for the issuing the attachment. The appellee resided in a distant county, and an effort had been made to buy the property of Menzies, and pay in the note sued on, which was refused. These facts fully justified the appellee in using the means adopted for the recovery of his demand.

3. Though the affidavit does not in so many words state that the debt is justly due, it states the amount of the note, and that affiant believes the plaintiff ought to recover, which is equivalent, for if it is not just the plaintiff ought not to recover. The provisions of the Code are to be liberally construed to effectuate the purposes of justice. (*Sec.* 874.)

The court is referred to the following authorities as bearing on the case: 5 *J. J. Mar.*, 574; 2 *Bibb*, 605; *Ib.*, 102; 4 *J. J. Mar.*, 22; *Ib.* 151; 3 *Dana*, 134; *Ib.*, 519; 2 *B. Mon.*, 298; 8 *Ib.*, 11; 14 *Ib.*, 534.

Chief Justice CRENSHAW delivered the opinion of the court:

Smith, on the 29th day of August, 1855, instituted this suit against Menzies, &c., upon a promissory note for $2,050; and his attorney, he being absent from the county, made an affidavit, stating, among other things, that Menzies was about "to sell, convey, or otherwise dispose of his property, with the fraudulent intent to cheat, hinder, or delay his creditors." An attachment issued, and was levied upon the slaves in controversy.

C. W. Taylor. the appellant, having petitioned the court for that purpose, was made a defendant to the suit; and he claims the slaves which were attached as his property, under a purchase of them from Menzies before the issual of the attachment The plaintiff insists that this purchase was frauaulent in law and in fact. The defendant, Taylor, insists that his purchase was fair and *bona fide* in fact, and valid in law.

In the morning of the day upon which the attachment issued the witnesses, McBrayer and Oliver, went out from Lawrenceburg to the dwelling-house of Menzies, some one or two miles distant and when they arrived there Taylor and others were at a table doing some writing. McBrayer and Oliver remained but a short time, and returned to town, and reported to the attorney of the plaintiff, Smith, that some trading was going on at Menzies'. This report induced the attorney to institute suit immediately, and to issue his attachment, which was placed in the hands of the sheriff, who forthwith proceeded to Menzies'; but, when he arrived Taylor had purchased the slaves in controversy. and one other from Menzies, and had departed with the latter slave. The sheriff attached the slaves in contest—they having been left by Taylor upon the premises.

It is proved that Taylor made the purchase, and paid his money for the slaves; that they were delivered, and that he carried one away with him; and it being inconvenient to take away, at the same time,

those that remained, they were left upon the premises, that Taylor might, the next morning, send a vehicle for them, and take them away, by which time Mrs. Menzies said she would have their clothing ready.

The purchase was absolute and unconditional, and the circuit court being of opinion that the leaving of the slaves in contest upon the premises was inconsistent with the right acquired by the purchase, and constituted the transaction a fraud *per se*, as to creditors, substantially instructed the jury, which was sworn to try the cause, that if they believed the state of facts above mentioned, as to the slaves remaining still with Menzies, the sale, as to creditors, was fraudulent in law, and passed no title to Taylor. And, whether the facts authorized this instruction is the first question which we shall consider.

There is no doubt that, as a general proposition, all absolute sales of personal property, when the possession remains with the grantor, are fraudulent in law. This is a well settled general proposition. But the principal reason of this rule of law is, that such possession gives to the vendor a delusive credit, whereby he may be able to cheat and defraud those who may be ignorant of the transaction. Another reason is, that the possession of the vendor, under such circumstances, is incompatible with the sale, and is a badge of collusion. This rule of law is a safe and reasonable one, but it should not be applied to cases where the reason of it fails, and where indeed its application would be unreasonable. It is true, that in the present case the slaves were permitted to remain *on the premises* of the vendor, but under circumstances altogether consistent with the sale, and consistent with reason and propriety. No delusive credit was extended in consequence thereof, nor is it probable that there could have been delusive credit caused thereby. It was inconvenient to take the slaves away immediately, and the purchaser left them merely to procure a suitable conveyance, which he

1. A party purchased several slaves, and paid the price, took one of them away with him, and was to return the next day with a vehicle to remove the other: Held, that thus leaving the slaves with the vendor was not fraudulent. It gave to vendor no delusive credit.

intended to procure on the following morning; and he either sent for them the next morning, or declined to do so in consequence of receiving word that the sheriff had attached and taken them off. The rigorous application of the general rule, as insisted upon by the counsel, would scarcely allow a purchaser to go to a near neighbors' house to procure the means of taking away his property on the same day. Various cases might be put, to show the unreasonableness of the application of the general rule in a case like this, but it is deemed unnecessary. The instructions of the court, predicated upon the erroneous idea which we have mentioned, are erroneous, and the judgment will have to be reversed.

But during the progress of the trial, and after most of the testimony had been given to the jury, the defendant, Taylor, moved the court to discharge the attachment, and the court overruled the motion. It is contended, that even if the attachment improperly issued, the motion came too late, and it was proper to overrule it. We do not see how a motion of this sort could well come too late, as the court, even upon final decision, should vacate the attachment if it were improperly issued. We perceive but one defect, and that is in the affidavit which was made to procure it. The affidavit states that the affiant believes that the plaintiff ought to recover the amount of the note sued on, but fails to state that he believes the demand to be *just*. This latter statement, as well as the other, is expressly required by the Code, and it is not for us to dispense with it. The attachment, therefore, ought to have been vacated.

During the progress of the suit the attorney filed an amended affidavit; but, even if were conceded that an affidavit could be amended after the issual and levy of the attachment—which we do not concede—the amended affidavit is defective in the same respect as the original.

Whether the purchase of the slaves was fraudulent *in fact* or not, was a question for the jury, and in re-

2. An affidavit to obtain an attachment should state that affiant believes the debt sued for to be just *Quere.* Could the affidavit be amended after the levy of the attachment?

gard to which we express no opinion one way or the other. What we have said renders it unnecessary to notice the instructions in detail asked by the parties. The administrator of Menzies made no defense.

Wherefore, the judgment is reversed, and the cause remanded, that the attachment be vacated and set aside, that the petition be dismissed as to Taylor, and that judgment be rendered upon the note against the representative of Menzies.