## Cornett et al. v. Greever.

(Decided March 26, 1937.)

NAPIER & NAPIER, C. W. NAPIER and EMMETT G. FIELDS for appellants.

FAULKNER & FAULKNER and LEWIS E. HARVIE for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming in part and reversing in part.

In 1928 the Swift Coal & Timber Company insti-
ᴜated an action in the United States District Court for
the Eastern District of Kentucky against the American
Column & Lumber Company, an Ohio corporation here-
inafter called the lumber company, for damages in a
very large sum growing out of an alleged breach by the
latter of a contract involving timber growing on lands
of the former in Letcher and possibly other counties in
Kentucky.

The lumber company was represented in the liti-
gation by the law firms of Morgan & Harvie, Greever &
Gillespie, and Faulkner & Faulkner. After the litiga-
tion had been pending for some time, these lawyers ap-
parently found that their client was hopelessly insolv-
ent, so they instituted actions against it in the Letcher
circuit court to recover the respective sums of $2,231.75,
$1,675.74, and $1,176.75 for legal services rendered and

expenses incurred in connection with this litigation and possibly with other matters, and caused a general order of attachment to issue against the lumber company which was levied by the sheriff upon a strip of land in Letcher county about 12 miles long and varying width, but averaging about 50 feet and containing approximately 50 acres, extending from Ulva, a station on the line of the Louisville & Nashville Railway Company, up Line Fork creek. This land was acquired from various landowners for the purpose, as appears in evidence, of constructing a railroad track for the removal of timber involved in the litigation in the federal court.

Plaintiff caused lis pendens notices to be filed and recorded in the county court clerk's office of Letcher county. Lewis Harvie, of the firm of Morgan & Harvie, had been designated as process agent for the lumber company under the provisions of section 571, Kentucky Statutes, and the company maintained its only office and place of business in this state at his law office in Whitesburg. Summons which issued in the case of Greever & Gillespie and Faulkner & Faulkner against the lumber company were served on Lewis Harvie, the corporation having no other officer or agent in the state; but in the case of Morgan & Harvie against the lumber company it was alleged that Harvie was the process agent of the defendant; that the company had no other officer or agent in the state upon whom process could be served, and asked that a warning order issue and that an attorney be appointed as provided in such case, and this was done.

The actions were consolidated, and on final hearing judgment was entered on September 2, 1930, for the respective amount sued for, the attachments sustained, and the land or so much thereof as was necessary to satisfy the attachment liens was ordered to be sold. At a sale made pursuant to the decree, plaintiffs became the purchasers of the entire tract for the amount of their debts, interest, and costs.

On May 22, 1933, the master commissioner of the Letcher circuit court conveyed the property to E. L. Greever, the surviving partner of the firm of Greever & Gillespie, to H. C. Faulkner and W. E. Faulkner of the firm of Faulkner & Faulkner, and Lewis E. Harvie of the firm of Morgan & Harvie, which was duly acknowledged, approved, and put to record.

In the meantime the lumber company had failed to pay taxes due on the property for 1931, and it had been levied upon, advertised, and sold for taxes by the sheriff, and Lilly Cornett became the purchaser at such sale held on March 6, 1932, of the entire tract of land for the taxes due for the year 1931. On March 19, 1934, W. H. Caudill, sheriff of Letcher county, conveyed the property to Cornett as purchaser under the tax sale, and the deed was duly put to record.

In May, 1934, the grantees in the deed from the master commissioner in the consolidated actions above mentioned instituted this action against Lilly Cornett and W. H. Caudill, sheriff of Letcher county, setting up the foregoing facts and alleging that they are the owners and in possession of the 50 acres of land under a deed from the master commissioner, but that Cornett unlawfully, wrongfully, and without any right was claiming to be the owner thereof by virtue of the deed from Caudill as sheriff. They attacked the sheriff's deed as void on numerous grounds hereinafter referred to. They prayed that the tax deed be canceled and held for nought and that their title to the land be quieted against any claim of Lilly Cornett thereunder and that the court determine the amount of taxes, interest, and penalties then due for the year 1931 by the lumber company and that plaintiffs be permitted to pay same into court.

By separate answer and counterclaim Cornett denied the allegations of the petition, set up title under the tax deed, and attacked the validity of the deed from the master commissioner to the plaintiffs. He prayed that the petition be dismissed and that he be adjudged to be the owner of the property in controversy and that his title to and possession thereof be quieted.

Considerable proof was taken in an attempt to sustain the contention of the respective parties, and on final hearing it was adjudged that the defendant acquired under the tax deed from the sheriff the legal title to all of the tract of land in controversy, subject, however, to the attachment liens of plaintiffs acquired in their consolidated actions against the lumber company and that so much of the petition as sought to cancel and hold the tax deed for naught be dismissed; that the plaintiffs through the proceedings had in the suits against the lumber company obtained valid and subsisting liens

upon all the tract of land which was embraced in the sheriff's sale for taxes to the defendant and in the deed subsequently made to him for the full amount of their respective debts, interest, and costs, and that their respective claims were of equal dignity. It was further adjudged that the tract of land could not be divided without greatly impairing its value, and that it be sold as a whole, and that out of the proceeds of the sale the costs of this suit should first be paid and that the defendant should then be paid the sum of $94.63, the amount paid by him for the land at the tax sale with interest from March 7, 1932, and, after these two sums had been paid, that the claims of the plaintiffs be paid and the excess, if any, should be paid to the defendant. Defendants excepted to so much of the judgment as adjudged plaintiffs a lien on the land under their attachment, and are appealing; and plaintiffs excepted to so much of the judgment as adjudged defendant to be the holder of legal title to the land under the tax lien, and upon their motion have been granted, and are prosecuting, a cross-appeal.

We shall first direct our attention to questions made concerning the validity of the tax deed, and at the outset we find the provision in section 4030, Kentucky Statutes, that:

"In all suits and controversies involving the titles of lands claimed or held under the deed executed by the sheriff in pursuance of the sale for taxes, the deed shall be prima facie evidence of the regularity of the sale and of all prior proceedings and title in the person to whom the deed has been executed."

The presumption of regularity which attaches to a tax deed and all prior proceedings under which it was acquired arising from this section of the statute casts upon the parties attacking it the burden of establishing such irregularity as will render it invalid. Kentucky Lands Investment Co. v. Simmons et al., 146 Ky. 588, 143 S. W. 43; White v. McIntosh, 145 Ky. 59, 139 S. W. 1057; Jones v. Johnson, 223 Ky. 478, 3 S. W. (2d) 1064 Such presumption of regularity may be rebutted and overcome by proof. Anderson v. Daugherty, 169 Ky. 308, 183 S. W. 545; Grays v. Mills, 196 Ky. 122, 244 S. W. 291. This statute merely fixed the burden of proof and thereby changed the rule which had previously obtained under a former statute; but the rule as to what is

a fatal irregularity in a tax sale and deed made thereunder is the same under the present as it was under the former statute. Kentucky Lands Investment Co. v. Simmons, supra, and cases therein cited.

Argument that the assessment, levy, advertisement, and sale of the land with respect to the description and location thereof, etc., was so fatally defective as to render the sale and the deed made thereunder void is so wanting in merit as to forbid a lengthening of this opinion to discuss the different objections raised in this particular, except to say that most of them could only be raised by the taxpayer whose land had been sold.

It is further argued that the lumber company had personal property in Letcher county and that the sheriff should first have levied upon such personal property as required by the statute. It is shown that the lumber company never listed any personal property for taxation in Letcher county, and the sheriff testified that he knew of no personal property belonging to it. The proof to sustain this contention is that there were some maps and plats of the land in controversy in the office of Mr. Harvie in Whitesburg which he testified were of some value and had a value to the owner of the land of something like $500.

Section 4149 of the Statutes relating to distraint for delinquent taxes provides in effect that the sheriff shall distrain sufficient personal property of the delinquent taxpayer to satisfy taxes, penalties, etc., if found in the county but, if sufficient amount of personal property is not found, he will then levy on the delinquent's land.

It is quite apparent that these maps and plats had no value except to the owner of the land, and nothing could have been realized from their sale to any other person.

If the failure of the sheriff to locate and levy upon the maps and plats invalidated the levy, appellee's attachment would for the same reason be invalid, since under the law personal property shall first be taken under attachment (Civil Code of Practice, sec. 206), and it is apparent that Mr. Harvie and his associates did not regard these maps and plats as having any value or as arising to the dignity of personal property,

since they failed to have the sheriff first levy upon them.

It is next argued that the sale of the land was not advertised as required by section 4149 of the Statutes, in that it was not advertised in a newspaper of general circulation in the county for four successive weeks next before the sale. The statute requires that the land "shall be advertised by posting, for 15 days before the sale, a written or printed notice at the courthouse door, and by publication once a week for four consecutive weeks prior to the day of sale in a newspaper of general circulation."

According to the evidence of the sheriff, this land, along with hundreds of other pieces of property, was advertised by notice posted at the courthouse door as required by statute and this is not denied. It was advertised along with other property in the newspaper of general circulation in Letcher county for four consecutive weeks, and, while the newspapers were not put in evidence, there is some evidence to the effect that the advertisement was not carried in the issue next before the day of the sale. While it may have been the intention of the Legislature that the advertisement should be in four consecutive issues of the newspaper next before the sale, the statute does not in express terms evince such a purpose, and, in view of the peculiar wording of the statute, we are constrained to hold there was a substantial, if not a literal, compliance, with its requirements.

It is next argued that the sheriff did not comply with this section of the statute in notifying the tax payer by post card of the date and place of the sale. The sheriff testified that, while he could not state positively, it was his impression or recollection that he had complied with this provision. Mr. Harvie, the agent and attorney of the lumber company, testified that he received no such notice, but there is no evidence that the company did not.

Appellees pleaded and attempted to establish by evidence that immediately after the sale Mr. Harvie approached Mr. Cornett and told him that the company would want to reimburse him or pay him well for bidding in the land at the tax sale, and requested him not to take any further steps in the matter unless and until

he notified the lumber company, which Mr. Cornett agreed to do. Mr. Cornett denied that he made any such agreement, and was corroborated by other witnesses who claimed to have been present at the time and to have heard the conversation.

On the whole, it is apparent, and we are constrained to hold, that appellees failed to meet the burden imposed upon them by section 4030 of the Statutes, and the chancellor's opinion with respect to the validity of the deed should not be disturbed.

Turning now to appellant's attack on that part of the judgment from which the appeal is prosecuted, we find among numerous other grounds urged for reversal of the judgment in that particular, argument that the attachments and judgments in the consolidated actions were void because of insufficiency of the affidavits for attachments; the principal criticism of the affidavits being that they did not state "the sum which the affiant believes the plaintiff ought to recover," as provided in section 196 of the Civil Code of Practice. It is admitted that the affidavit in each instance does sufficiently set forth the nature of the plaintiff's claim and that it is just. There were no separate affidavits for attachment in any of the consolidated actions, but the affidavit for attachment was embodied in the verified petitions. In two of the petitions the affidavits are identical and read:

"The plaintiffs say their claim for services and expenses as stated above is correct, reasonable and just; that same is long past due; that there are no set-offs or counterclaims in favor of the defendant against the same; * * * "

This is followed by some of the grounds of attachment set out in section 194 of the Civil Code of Practice. In the other action the affidavit omits the words "that same is long past due," as used in the other affidavits, and inserts in their stead the words, "that no part thereof has been paid to them by defendants or at all." Otherwise the language of all the affidavits is practically identical.

In the case of Taylor v. Smith, 56 Ky. (17 B. Mon.) 536, an action on a promissory note, it was said:

"The affidavit states that the affiant believes that the plaintiff ought to recover the amount of the

note sued on, but fails to state that he believes the demand to be just. This latter statement, as well as the other, is expressly required by the Code, and it is not for us to dispense with it.''

See, also, Bailey v. Beadles & Bolinger, 70 Ky. (7 Bush) 383.

In Moore v. Harrod, 101 Ky. 248, 40 S. W. 675, 676, 19 Ky. Law Rep. 406, it is said:

"The petition in this case sets up a cause of action on a note, followed by a statement of certain grounds of attachment under section 194 of the Civil Code. There is, however, no attempt, beyond a statement of the grounds of attachment, to conform to the requirements of section 196 of the Code, which, in addition, requires the affidavit to show (1) the nature of the plaintiff's claim; (2) that it is just; (3) the sum which the affiant believes the plaintiff ought to recover. If, therefore, we hold that the nature of the claim is sufficiently set out, still there is no averment that the claim is just, and no statement in terms of the sum affiant believes the plaintiff ought to recover. This court has held several times that a failure to so state is fatal, and this although the petition is upon a note for a given sum which is alleged to be due and unpaid.''

To the same effect, see Hart County Deposit Bank v. Hatfield, 236 Ky. 725, 33 S. W. (2d) 660; Howard v. Howard, 239 Ky. 160, 39 S. W. (2d) 245; Frick & Lindsay Co. v. Lantz & Ogden, 199 Ky. 354, 251 S. W. 196; Worthington v. Cary, 58 Ky. (1 Metc.) 470; Colovas v. Allen Motor Co., 242 Ky. 93, 45 S. W. (2d) 809; Garnett v. Oliver, 242 Ky. 25, 45 S. W. (2d) 815; United Collieries, Inc., v. Martin, 248 Ky. 808, 60 S. W. (2d) 125, 126, 89 A. L. R. 971. In the latter case it is said:

"The proceeding in garnishment is special and statutory, affording a harsh remedy, and one pursuing it must bring himself within the statute and follow its mandates. The steps are outlined for vesting the court with jurisdiction over the person of the garnishee and the property in his hands belonging to the principal defendant. It is generally held that these provisions are jurisdictional and unless they have been strictly complied with the court has no authority to proceed. * * * A distinc-

250

tion is to be noted in this connection where there was merely a defect in the process or its service upon the garnishee and where there was a fatal fault in the foundation upon which the order of attachment was obtained. The garnishee may waive the defects in the service or form of writ, thereby conferring jurisdiction of the court over his person; but he cannot waive the other essential elements giving control over the res or property of the principal defendant sought to be taken from him.''

As will appear from the cases cited, this court is unalterably committed to the rule that a strict compliance with the provisions of section 196 of the Code is essential to the validity of the attachment or proceedings under it. The reason for the rule is that the remedy afforded the creditor is purely statutory and is harsh and extraordinary in that it dispossesses defendant of his property in advance of adjudication of his rights. Looking to the grounds for attachment above set out, it will be found that there is no statement in words or in terms ''the sum which the affiant believes he ought to recover''; therefore, in harmony with the established rule from which we see no reason to recede, we are constrained to hold that the affidavits for attachments were fatally defective and therefore the attachments and subsequent proceedings under them were void. This conclusion renders it unnecessary to consider any other grounds argued by appellants.

Wherefore the judgment is affirmed on cross-appeal, but is reversed on appeal with directions to enter judgment in conformity with this opinion.

Whole court sitting.