**DUO–THERM DIVISION, MOTOR WHEEL CORPORATION, Appellant,**

v.

**SHEERGRAIN, INC., Appellee.**

Court of Appeals of Kentucky.

Nov. 23, 1973.

Rehearing Denied Feb. 15, 1974.

Matthew B. Quinn, Jr., Louisville, for appellant.

Ed P. Jackson, Jr., Alan T. Slyn, Louisville, for appellee.

PALMORE, Chief Justice.

In December of 1968, while the appellee, Sheergrain, Inc., had two camper trailers on display at a national show in Louisville, the appellant, Duo-Therm Division, Motor Wheel Corporation, filed this action against Sheergrain in the Jefferson Circuit Court for $841.15 allegedly due on a mercantile account and caused a general order of attachment to be issued and levied on the two trailers. Sheergrain answered, admitting a debt of $808.80 but denying it was overdue, and counterclaimed for $70,000 damages on grounds of wrongful

attachment. Cf. KRS 411.080. Duo-Therm appeals from a judgment eventually entered pursuant to a verdict awarding Sheergrain $35,000 on the counterclaim.

On March 7, 1969, Sheergrain moved for an order discharging the attachment. On March 28, 1969, Duo-Therm moved for a summary judgment awarding it $808.80, this motion being supported by an affidavit showing that to be the correct amount of the debt. On May 6, 1969, without acting on either of these motions, the trial court entered an agreed order "without any prejudice to the plaintiff and defendant herein" directing release of the two trailers upon payment of $808.80 by Sheergrain to Duo-Therm. On December 8, 1970, Sheergrain was awarded summary judgment against Duo-Therm on the issue of liability asserted by its counterclaim and the case was assigned for trial on the issue of damages.

■ Duo-Therm's first contention is that the trial court erred in failing to grant its motion for summary judgment in the amount of $808.80. Since, however, it is evident that the agreed order of May 6, 1969, was consummated by the payment of $808.80 and release of the trailers, it seems to us that on this phase of the litigation there is nothing of substance left to talk about. If obtaining virtually the same relief by way of summary judgment rather than the agreed order would have had some dispositive significance with respect to the claim for wrongful attachment, it has not been revealed to us.

■ A judgment for the defendant on the merits of the cause of action supporting an attachment is conclusive of the attachment's having been wrongful, notwithstanding the existence of the requisite technical grounds for the attachment. Cf.

KRS 425.475; 6 Am.Jur.2d Attachment and Garnishment, § 601, p. 988; City Lumber Company v. Barrett, Ky., 327 S.W.2d 402, 404 (1959); Watkins v. Carter, 267 Ky. 241, 101 S.W.2d 932, 936 (1937); Mitchell v. Mattingly, 58 Ky. (1 Metc.) 237 (1858). Certainly, however, the converse could not be true with respect to a judgment for the plaintiff on the merits. If it were, any valid claim would support an attachment. In the absence of an order or recitation in the judgment sustaining the attachment, a summary judgment on the merits for the amount of the debt would have given Duo-Therm no advantage it did not receive through payment pursuant to the agreed order.

■ It is further contended that the summary judgment for Sheergrain was improper because there was an issue as to a material fact. Actually there was no factual issue with respect to the sufficiency of the stated grounds to support the attachment. The only possible question here is the propriety of the trial court's judgment that the attachment was wrongful for the reason that the supporting affidavit was insufficient on its face.

The grounds for attachment were set forth in a separate affidavit executed by Duo-Therm's counsel, which affidavit was deficient in the following particulars:

1. It did not comply with the requirements of CR 43.13(1) for an affidavit by counsel in behalf of a client, in that it failed to recite that no officer of the plaintiff corporation authorized to execute the affidavit was present in the county. See Northern Lake Ice Co. v. Orr, 102 Ky. 586, 19 KLR 1634, 44 S.W. 216 (1898).[1]

2. It did not state that the claim was just, as required by KRS 425.195(2). See United Collieries, Inc., v. Martin, 248 Ky.

---

1. Moorman v. Taylor, 285 Ky. 347, 147 S.W. 2d 1021 (1941), overruling that portion of First National Bank v. Sanders Brothers, 162 Ky. 374, 172 S.W. 689, 692 (1915), in which it was said that "the affidavit for a warning order, as well as the affidavit for an attachment," if made by *any person* other than the chief officer or agent of a corporation, must show that the officer whose duty it is to make it is then absent from the county, applies only to corporate officers as distinct from attorneys or other agents.

808, 60 S.W.2d 125, 126, 89 A.L.R. 971 (1933).

3. Though it recited that Duo-Therm was seeking a judgment in the sum of $841.15, it did not state what amount the affiant believed the plaintiff ought to recover, as required by KRS 425.195(3). See Crawford's Adm'r v. Ross, 299 Ky. 664, 186 S.W.2d 797, 801 (1945); Cornett v. Greever, 272 Ky. 241, 113 S.W.2d 1127, 1131 (1937).

█ It is suggested that these omissions are merely technical and that the rule of substantial compliance should apply. Our precedents are uniformly to the contrary. "The reason for the rule is that the remedy afforded the creditor is purely statutory and is harsh and extraordinary in that it dispossesses defendant of his property in advance of adjudication of his rights." Cornett v. Greever, *supra*, at 113 S.W.2d 1131. The fact is that although usually copied out of the book and signed in rote and slapdash fashion, these sworn assurances are intended to be matters of genuine substance. Their unamended [2] absence is fatal. We do not reach the constitutional question raised under Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

The award of $35,000 is attacked as excessive, and this would present a most serious question were it not for the procedural setting in which it is raised.

Sheergrain's counterclaim, filed within three weeks of the attachment, alleged it had "lost sales" and had been "deprived of credit" and "publicly embarrassed with prospective customers," and demanded $70,000 in damages. An amended counterclaim subsequently tendered but never ordered to be filed, cf. CR 15.01, asserted that Sheergrain's business had been defamed by reason of the attachment. On May 6, 1971, at the conclusion of the evidence, apparently in an effort to bring its pleadings into conformity with the proof,

CR 15.02, Sheergrain filed an amended *third-party complaint* (having theretofore filed a third-party action against the sheriff and other parties, all of whom were eventually exonerated by the jury's verdict) claiming special damages of $3235.96 and alleging it had been "further damaged by the wrongful acts complained of in that it sustained injury to its reputation and it lost profits." Then, in the course of argument concerning the instructions to be given the jury, counsel for Duo-Therm objected to that portion of instruction No. 2 permitting recovery for damage to Sheergrain's "reputation, business or lost profits" because lost profits had not been mentioned in the "counterclaim or amended third-party complaint."

Instruction No. 2 as given to the jury authorized recovery of special damages "and for these [sic] damages, if any, resulting from the injury of Sheergrain, Inc.'s business including injury to its reputation, business or lost profits, if any," not exceeding a total of $70,000. No instruction was asked or given setting forth a measure of damages for the guidance of the jury.

█ Duo-Therm may very well have had a valid objection to the instructions on the ground that they authorized recovery for one or more species of damages and for a length of time (there having been no amendment covering damages up to the date of the trial or thereafter) not fairly embraced within the allegations of the counterclaim. It certainly had an objection, but did not assert it, on the ground that no measure of damages was provided. Be all that as it may, Duo-Therm makes no complaint in this court against the instructions, so they must be accepted as the criterion of the jury's judgment, and of this court's judgment in determining whether the award was excessive.

Sheergrain is a small corporation, 52 of its 55 outstanding shares being owned by James D. Shearer, its principal witness. It

2. See KRS 425.510(2).

began the full-scale manufacture of recreational vehicles in late 1966. Its financial records were kept on a fiscal year basis ending on May 31. They show the following experience before and after the date of the attachment in December of 1968:

| Semi-annual period ending | Gross sales | Net profit |
|---|---|---|
| 11/30/67 | $ 62,155 | $ |
| 5/31/68 | 68,338 | |
| | 130,493 | 1,729 |
| 11/30/68 | 84,186 | |
| 5/31/69 | 50,145 | |
| | 134,331 | (14,079) |
| 11/30/69 | 47,943 | |
| 5/31/70 | 40,135 | |
| | 88,078 | (4,894) |
| 11/30/70 | 36,276 | |

■ With respect to the market value of the entire business as a going concern Shearer testified that before the attachment incident it was worth three times its current annual gross sales, or some $300,000, whereas afterward (presumably at the time of the trial) it had declined to the point that it was worth only what its inventory and equipment would bring, or about $75,000. This testimony was admitted over objection, and was followed by cross-examination with respect to value of the corporate business, as such, vis-a-vis value of the stock or proprietorship interest. Again, however, the objection is not pursued on the appeal, which means the evidence is now to be regarded willy-nilly as competent.[3]

■ The logical measure of damages for injury to the reputation and good will of a corporate going business is the diminution in such earnings, or net income, as the jury believes from the evidence it is reasonably probable the plaintiff would have realized but for the injury. Cf. Sedgwick on Damages (9th ed.), § 182; Allison v. Chandler, 11 Mich. 542 (1863). As a matter of "just and reasonable inference" a jury may find causal connection between a wrongful act having a natural tendency to injure a business and an ensuing decline in sales and profits not shown to be attributable to other causes. Cf. Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1945). "The quantum of proof required to establish the amount of damage is not as great as that required to establish the fact of damage." Callman, The Law of Unfair Competition, Trademarks and Monopolies (3d ed.), § 89.3(a).[4]

■ The "first blush" rule can be invoked only when an award is so great that its excessiveness is obvious without looking beyond the essential facts and circumstances of the case. Cf. Commonwealth, Dept. of Highways v. Brent, Ky., 436 S.W. 2d 781, 782 (1969). It does not apply here. Thus we must look to the evidence and the instructions. Had the jury been restricted to loss of earnings in addition to the special damages occasioned by the wrongful attachment it is very doubtful that the evidence could be held sufficient to support an award of $35,000. But the instructions imposed no such boundaries. From what was permitted to be heard and considered under instructions that provided no guidelines to the jury we simply are not able to say the amount of its verdict was unwarranted.

■ The remaining argument concerns the reception of testimony by the witness Deason that he had considered accepting a responsible position with Sheergrain but finally decided against it because certain other people had told him about the attachment incident. This, it is said, was inadmissible hearsay, but it must be remembered that the damage to Sheergrain consisted of a loss of business reputation, or good will. Reputation can scarcely be assessed except by what people say. Deason's testimony was direct proof of a damaged reputation and of its effects. It was

3. Ordinarily, a decrease in what a corporate business would bring if sold out lock, stock and barrel as a going concern would seem to be a loss to the shareholders rather than the corporation itself. However, it is not impossible for a corporation, as such, to sell its assets and good will. The subject has not been explored to any depth in this proceeding.

4. Cases and materials pertaining to anti-trust and other unfair trade litigation provide about the best available reservoir of information on measuring damage to business.

not received as evidence of the truth of what was said, but as evidence of *the fact that it had been said* and broadcasted and that the witness had been influenced by it. Cf. Caudill v. Citizens Bank, Ky., 383 S. W.2d 350, 352 (1964).

> "Wherever an utterance is offered to evidence the *state of mind* which ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned." Wigmore on Evidence (3d ed.), § 1789. "On this principle, the Hearsay rule interposes no objection to the use of letters, notices, oral informations, reputation, or any other form of verbal utterance by one person, as circumstantial evidence that *another person had knowledge* or belief as to . . . . the *insolvency* or *lunacy* of a vendor" etc. *Ibid.*

The judgment is affirmed.

PALMORE, C. J., and JONES, MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.