**June ISON, Executrix of the Estate of Roy Campbell, Appellant/Cross–Appellee**

v.

**Ricky ROBINSON; Tonia Robinson; Robinson and Hicks Construction, Inc.; David Sizemore; Valerie Sizemore, Mark D'Onofrio; Kristi D'Onofrio; Terry North; Kim North; Rizwan Ali; Shaheen Ali; Clarice W. Wallace; Howard Feltner; Phyllis Feltner; and Jerry Wyrick, Appellees/Cross–Appellants.**

Nos. 2010–CA–000898–MR, 2010–CA–000945–MR, 2010–CA–001490–MR, 2010–CA–001619–MR.

Court of Appeals of Kentucky.

Sept. 20, 2013.

Charles Allen, Hazard, KY, Donald Duff, Frankfort, KY, for Appellant/Cross–Appellee.

D. Eric Lycan, Lexington, KY, for Appellees/Cross–Appellants.

Before COMBS, NICKELL, and TAYLOR, Judges.

TAYLOR, Judge:

June Ison, Executrix of the Estate of Roy Campbell, brings a direct appeal from a judgment entered by the Perry Circuit Court on February 22, 2010, confirming an arbitration award in favor of Ricky Robinson, Tonia Robinson, Robinson and Hicks Construction, Inc., David Sizemore, Valerie Sizemore, Mark D'Onofrio, Kristi D'Onofrio, Terry North, Kim North, Rizwan Ali, Shaheen Ali, Clarice W. Wallace, Howard Feltner, Phyllis Feltner, and Jerry Wyrick (hereinafter collectively referred to as appellees) (2010–CA–000898– MR). Appellees cross-appeal from that judgment on the issue of whether the circuit court should have awarded prejudgment interest at the rate of 12 percent per annum from the date of the original arbitration award entered January 16, 2004 (2010–CA–000945–MR).[1] Additionally, June Ison, Executrix of the Estate of Roy Campbell, further appeals a subsequent order entered by the Perry Circuit Court

---

1. The February 22, 2010, judgment granted prejudgment interest from the date of the arbitration award, January 16, 2004, to date of judgment at the rate of 8 percent per annum, and 12 percent thereafter from the date of judgment.

on July 12, 2010, which again confirmed the arbitration award and further denied various Kentucky Rules of Civil Procedure (CR) 59 motions that had been made after the original judgment was entered February 22, 2010 (2010–CA–001490–MR). This order also denied any prejudgment interest to appellees on the award.[2] Appellees cross-appeal, asserting that they are entitled to prejudgment interest from the date of the arbitration award, as originally ordered (2010–CA–001619–MR) on January 16, 2004. Apparently the parties were concerned with a "calendar" order entered by the circuit court at the hearing on the CR 59 motions on April 9, 2010, which facilitated the filing of the first appeal and cross-appeal. While this Court has substantial doubt as to whether the calendar notations made by the Perry Circuit Court on April 9, 2010, constituted a final judgment as required under Kentucky Revised Statutes (KRS) Chapter 417, *et seq.*, and CR 54.01, the parties have, nonetheless, properly perfected their appeals and for judicial economy this Court has considered all of the appeals together.

## BACKGROUND

This action was commenced in 1999 for alleged damages to real property and other damages as subsequently asserted in various amendments to the complaint. In August of 2003, the parties entered into a binding arbitration agreement that referred this matter to an arbitrator to resolve all disputes in a final and binding arbitration proceeding. As stated, the original arbitration award was granted January 16, 2004. This arbitration award was vacated by the Perry Circuit Court by order entered April 16, 2004, which was subsequently appealed to this Court in Appeal No.2004–CA–000936–MR. In an unpublished opinion rendered by another panel of this Court on February 24, 2006, we vacated the circuit court's April 16, 2004, order and remanded to the Perry Circuit Court for further proceedings consistent therewith.[3] Specifically, our earlier opinion (2004–CA–000936–MR) vacated and remanded the arbitration award as follows:

> [G]iven our inability to ascertain the basis of the circuit court's ruling and the concerns noted above, we believe that it is appropriate in this case to vacate the court's order and remand this matter for further consideration consistent with KRS 417.160, *3D Enterprises [Contracting Corp. v. Lexington–Fayette Urban County Government,* 134 S.W.3d 558 (Ky.2004) ], and this opinion.

Subsequently, the orders entered in 2010 by the Perry Circuit Court on remand confirmed the original arbitration award entered January 16, 2004, resulting in the appeals now before this Court.

As noted, this case arose from a claim for alleged damages to real property as a result of the actions of appellant Roy Campbell.[4] The relevant underlying facts of this case were developed in particular detail by this Court in its earlier opinion (2004–CA–000936–MR) and are restated here as follows:

---

2. The July 12, 2010, order, styled "Final and Appealable Order," modified the February 22, 2010, judgment to the extent of denying any award of prejudgment interest, with post-judgment interest thereafter accruing at the "legal" rate of interest.

3. A motion for discretionary review filed with the Kentucky Supreme Court was denied on November 15, 2006. The appeal became final on December 1, 2006.

4. Roy Campbell passed away during the pendency of this appeal and June Ison, executrix of his estate, has been properly substituted as a party herein.

Appellants [now appellees] are either developers or homeowners in the Apple Ridge subdivision, a residential mountainside community built on a mine bench above Highway 80 in Perry County, Kentucky. Appellants [now appellees] Ricky and Tania Robinson and Robinson & Hicks Construction Company, Inc. (hereinafter "RHCC") purchased the Apple Ridge property from Appellee Roy Campbell for the purpose of building a residential subdivision thereon. Campbell continued to own the property directly below Apple Ridge and, after the sale, he began excavating his property for its own development. This excavation allegedly undermined the slope of the mountainside, resulting in damage to the Apple Ridge development.

Specifically, Appellants [now appellees] allege that the removal of the subjacent support for the slope caused it to collapse in places and to sink several feet, resulting in damage to the Apple Ridge homes and to Apple Ridge Lane (the only access road to the development) and a decrease in the value of the remaining undeveloped property. Appellants [now appellees] further allege that damage continues to this day, as the slope continues to slide and sink. Appellants [now appellees] also note that an investigation by the United States Department of Surface Mining has apparently concluded that Campbell's removal of the toe of the slope has resulted in damage to their property.

Consequently, on March 11, 1999, the Robinsons and RHCC filed suit against Campbell in Perry Circuit Court seeking damages for the destruction of the value of the Apple Ridge property and for the business damage caused to RHCC. Eventually, after additional parties entered into the litigation, it was agreed that the matter would be submitted to Pierce Hamblin for binding arbitration pursuant to a written arbitration agreement. The agreement set forth that Hamblin had the power "to fully adjudicate this dispute and to grant all remedies necessary to implement such adjudication." It further stated that "[t]he parties hereby agree to submit to binding arbitration the respective claims and controversies mentioned above, together with all demands and differences arising out of the agreement."

As required by the agreement, the parties made submissions to Hamblin, and an arbitration hearing was held on November 15, 2003[,] according to rules mutually agreed upon by the parties. These rules included an agreement that each witness would make an oral statement as to the substance of his testimony and an agreement that cross-examination would not be permitted. Following the hearing, Hamblin rendered an "Arbitration Opinion and Award" on January 16, 2004, finding that "the primary and precipitating cause for the damages sustained by [Appellants] was excavation and/or removal of the subjacent support system below the mine bench of Apple Ridge subdivision [by Campbell]" and awarding Appellants [now appellees] the combined sum of $732,500.00. Hamblin's decision rested primarily upon the results of the investigation conducted by the U.S. Department of Surface Mining, which found that "one can only conclude that in this case, the landslide was caused by the excavation work performed along the toe of the slope below the subdivision bench."

Campbell subsequently sought to amend Hamblin's arbitration award, ostensibly pursuant to the statutorily—permitted challenges set forth under (Kentucky Revised Statutes) KRS

417.130 and 417.170(1). He specifically claimed that there was a miscalculation of figures on Hamblin's part, and also that Hamblin rendered an award on a matter not submitted to him. In an "Arbitrator's Decision" rendered on February 20, 2004, Hamblin found that Campbell's contentions lacked merit because, substantively, they did not fall under the permitted challenges set forth under the statute. As to Campbell's first challenge, Hamblin specifically found that the "Arbitration Opinion and Award contained no calculation of figures in which there could have been an 'evident miscalculation,' and no mathematical error was pointed to by [Campbell]," and that Campbell's "objection to the items of damages awarded is not an objection to the calculation of same, but to the judgment of the Arbitrator in making the award." As to Campbell's second contention, Hamblin concluded that all matters were submitted to him pursuant to the arbitration agreement. He further noted: "The award and all items of damages therein were properly within the scope of matters submitted to arbitration, and in any event could not be modified without affecting the merits of the decision upon the issues submitted." Hamblin then stated a general conclusion that "the challenges forwarded by [Campbell] go to the merits of the decision, and therefore fail" and noted that even if KRS 417.170(1) allowed an arbitrator to modify or correct an award based on the merits, no such modification or correction was necessary here because the award was justified by the evidence.

Campbell subsequently moved the circuit court to vacate the arbitrator's award, arguing that—pursuant to *Carrs Fork Corp. v. Kodak Mining Co.*, 809 S.W.2d 699, 702–03 (Ky.1991)—the award was so excessive as to be tantamount to fraud, and also that it was obtained by undue means in violation of KRS 417.160(1)(a). Campbell specifically objected to the fact that Appellants [now appellees] had submitted an arbitration memorandum to Hamblin, arguing that although the arbitration agreement allowed for concurrent submission of items to be considered by the arbitrator and did not require service of those items to opposing counsel, the failure to serve counsel constituted obtaining the award by undue means. Campbell also reiterated his argument that the evidence was insufficient to support the damages awarded.

Campbell's challenge was heard by the circuit court on April 16, 2004. At the hearing, the special judge decided to vacate the arbitrator's award, with his justification for his decision reading only as follows: "Well I have a real question as to what the arbitrator based his decision on and the only thing that is submitted that he based his decision on, because I don't have a transcript of anything else, is this memorandum which was not supplied to opposing counsel. Motion to vacate is sustained." An order vacating the award was entered on April 26, 2004, with no specific basis for the ruling given therein.

On remand, the circuit court confirmed the arbitrator's award and entered judgment thereon. Appellees were awarded a combined sum of $732,500, including $300,000 for "damage to credit rating" of appellee Robinson & Hicks Construction, Inc., (RHCI) which looks to the primary grounds of error below as argued by appellant in this appeal.

### STANDARD OF REVIEW

In Kentucky, a court's review of an arbitration award is very limited as set forth in KRS 417.160. The grounds for vacating

an arbitration award under the Kentucky Uniform Arbitration Act (Act) as set forth in KRS 417.160 are:

(1) Upon application of a party, the court shall vacate an award where:

(a) The award was procured by corruption, fraud or other undue means;

(b) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(c) The arbitrators exceeded their powers;

(d) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of KRS 417.090, as to prejudice substantially the rights of a party; or

(e) There was no arbitration agreement and the issue was not adversely determined in proceedings under KRS 417.060 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court is not ground for vacating or refusing to confirm the award.

In *3D Enterprises Contracting Corp. v. Lexington–Fayette Urban County Government*, 134 S.W.3d 558 (Ky.2004), the Kentucky Supreme Court held that an arbitration award may only be set aside by a court pursuant to those grounds listed in the Act as stated in this opinion. And, any claim that the arbitrator misapplied the law of damages or failed to properly resolve the facts of the case are not subject to review by the courts. *Conagra Poultry Co. v. Grissom Transp., Inc.*, 186 S.W.3d 243 (Ky.App.2006). We will now address both appeals and cross-appeals in accordance with this standard of review.

### ANALYSIS

We begin our analysis by noting that this case has a very lengthy and somewhat tortuous history. The complaint was originally filed in 1999 and amended on at least four occasions. The case was referred to mediation in 2002, which was not successful in resolution of the dispute. After conducting extensive discovery, the parties entered into a binding arbitration agreement in August 2003 and submitted the matter before an arbitrator in November 2003. In addition to the arbitrator, two circuit judges and two special judges assigned to the Perry Circuit Court have presided over this case at sometime during the proceeding. And, of course, this is the parties' second trip to the Kentucky Court of Appeals.

### (i) The Direct Appeals
2010–CA–000898–MR

2010–CA–001490–MR

Appellant's first argument is that the circuit court failed to follow the mandate of our earlier opinion rendered February 24, 2006, on remand; i.e., that being the circuit court failed to state the statutory basis for vacating the arbitrator's award. In other words, the circuit court failed to identify the grounds in KRS 417.160 which would warrant setting aside the award. However, the judge who vacated the award, Judge John David Caudill, was not a regular circuit judge sitting in Perry County at the time he entered his order vacating the award in 2004.[5] On

---

5. John David Caudill, Chief Regional Circuit Judge from Floyd County, was sitting as the Perry Circuit Judge per special assignment.

remand, the case was ultimately assigned to Special Judge Ron Johnson.[6] For almost three years thereafter, the parties submitted memoranda of law, attended status conferences and hearings, and argued their respective positions regarding the arbitration award. Special Judge Johnson ultimately made detailed findings of fact and conclusions of law and entered a judgment confirming the award on February 22, 2010. In our review of the record, we find nothing improper in the proceedings conducted by Special Judge Johnson in reaching his decision to confirm the award, albeit he reached a different result than that of Special Judge Caudill in 2004. In finding no statutory grounds or legal basis to overturn the arbitration award, Special Judge Johnson properly entered judgment confirming the award.

Notwithstanding that we find no legal error in the conduct of the proceedings on remand, we nonetheless have thoroughly and exhaustively reviewed the record in this case in accordance with KRS 417.160. Appellant argues in this appeal, as he did before the circuit court below and in the earlier appeal before this Court, that the arbitrator's award was procured by undue means. Appellant specifically argues that the damage claims asserted by appellees in an "*ex parte* memorandum" submitted to the arbitrator were improper, especially as concerns a claim asserting damages to RHCI's "credit rating." RHCI asserted damages of $500,000 before the arbitrator and was awarded $300,000 in damages by the arbitrator for this claim.

The gist of this appeal is focused on the award to RHCI for loss of credit rating. In the fourth amended complaint filed in August of 2002 and more than a year before the arbitration, RHCI asserted claims for lost business profits and interest, as well as damage to its property. In the court's order entered April 21, 2003, prior to the submission of this case to binding arbitration, the circuit court held that RHCI was entitled to prove all damages, including lost profits, economic damages, and punitive damages.

■ Injury or damage to credit or loss of credit rating has been recognized as a compensable damage in tort claims by Kentucky courts. *H.S. Leyman Co. v. Short*, 214 Ky. 272, 283 S.W. 96 (Ky.1926). Damages for injury to credit rating are analogous to a damage to a business' reputation or good will, which also looks to lost profits or earnings, and are thus recoverable in Kentucky. *Duo–Therm Div., Motor Wheel Corp. v. Sheergrain, Inc.*, 504 S.W.2d 689 (Ky.1973). The arbitration agreement entered into by the parties in August of 2003, to which they were both bound, clearly states that all claims and controversies set out in the circuit court litigation were to be submitted to binding arbitration. Given the circuit court's earlier ruling and the agreement reached by the parties for arbitration, we can find no error or contravention of KRS 417.160 by the arbitrator in considering and awarding damages for loss of credit rating asserted by appellee RHCI.

However, appellant further claims that because appellees' memorandum to the arbitrator regarding the damage to credit rating issue was not served on appellant's attorney, he was not made aware of this substantial claim prior to the arbitration hearing, thus blindsiding appellant, which he argues was totally improper. The arbitration agreement specifically allowed for the concurrent submission of information

---

6. The record is unclear when Special Judge Ron Johnson was actually assigned to the case; presumably, he was assigned sometime in 2007 due to the illness of Circuit Judge William Engle.

and evidence to the arbitrator by both parties, prior to the arbitration. And, the arbitrator notes on page three of the award that RHCI was seeking an award for damage to its credit rating. The arbitrator further indicated in his decision overruling appellant's application to amend the award, that both parties gave testimony and argument on this damage issue. Our review of the record reflects that appellant was aware that appellees were seeking substantial damages, including punitive damages, well in excess of one million dollars. This prayer for damages is likely the reason mediation failed in 2002. In December of 2002, almost a year before the arbitration, appellant noted in his motion for partial summary judgment, RHCI's claims in its fourth amended complaint for "lost profits and other business-related damages." While in hindsight, arbitration may not have been a favorable strategy for appellant, he nonetheless agreed to the procedures and terms for the arbitration and the arbitrator did not commit any violation of KRS 417.160, especially any act of fraud or undue means, in conducting the proceedings pursuant to the parties' agreement.

■ As noted by Special Judge Johnson in his detailed findings, the circuit court (Judge Douglas C. Combs, Jr.) had previously ordered on April 21, 2003, that RHCI was entitled to seek and prove all alleged damages to compensate them for their losses, including punitive damages. While this Court may question the wisdom of the terms and procedures the parties agreed to in the arbitration, including the submission of a concurrent memorandum to the arbitrator without service on opposing counsel that included damage claims and evidence regarding those claims, this conduct does not rise to the level of undue means or fraud as provided for in KRS 417.160. The arbitrator heard testimony and considered evidence on this issue and as an appellate court, we cannot weigh this evidence or otherwise substitute our judgment for that of the arbitrator. *Taylor v. Fitz Coal Co., Inc.*, 618 S.W.2d 432 (Ky. 1981).

While arbitration is favored in the law, this case clearly highlights the perils and pitfalls facing parties and their counsel who enter into binding arbitration under applicable federal and state law. By agreement, the parties submit their claims to an individual who is not a judge, where the proceedings become exclusively subject to the rules and procedures of the arbitration venue. The arbitrator effectively becomes both the judge and jury whose decision is binding on the parties. Parties who enter into arbitration customarily agree not to avail themselves of evidentiary rules and procedural safeguards that are mandatory in court proceedings. And perhaps most importantly, there exists very limited judicial review of an arbitrator's decision as set forth in the statutory authority that has been highlighted in this opinion. This case appeared to be ready for trial by jury in 2002 and certainly no later than the fall of 2003. Yet the parties agreed that the most expeditious resolution of this dispute was by way of arbitration, and there is no challenge to the existence of the agreement or its terms in this case. Unfortunately, this Court cannot undo the consequences of the decision of the parties to arbitrate this dispute in 2003.

Accordingly, we can find no error in the circuit court's judgment confirming the arbitration award.

*(ii) The Cross–Appeals*
2010–CA–000945–MR

2010–CA–001619–MR
■ The cross-appeals look to appellees' assertions that they are entitled to pre-

judgment interest dating back to the granting of the arbitrator's award on January 16, 2004. The original judgment confirming the award, entered by the circuit court on February 22, 2010, granted prejudgment interest but was modified by the subsequent final judgment entered on July 12, 2010, which disallowed any prejudgment interest prior to February 22, 2010.

██ We believe the circuit court's analysis of this issue is legally correct. When the arbitration award was vacated by the circuit court on April 26, 2004, there was no enforceable award upon which interest could have accrued. In other words, there was no valid liquidated claim established until judgment was entered in appellees' favor on February 22, 2010. The law regarding the award of interest on damage claims is well settled. If the damages are liquidated or otherwise fixed by agreement or operation of law, prejudgment interest is allowed as a matter of course. *Nucor Corp. v. General Electric Co.*, 812 S.W.2d 136 (Ky.1991). An award of interest on unliquidated claims is subject to the discretion of the trial court. *Id.* In this case, we find no abuse of discretion or error by the trial court in denying prejudgment interest. The arbitrator's award, having been vacated in 2004, did not become final until the final judgment was entered on February 22, 2010. There was no enforceable liquidated claim in appellees' favor until that date. Appellees entered into the arbitration asserting damages of almost $2,000,000. The claim was disputed and obviously not easily ascertained. The arbitrator's award of damages in 2004 totaled $732,500, which was subsequently vacated by the circuit court. The opinion of this court entered February 24, 2006, did not reinstate the award but rather vacated for further proceedings. Given these circumstances, the circuit court's judgment on the denial of prejudgment interest shall be affirmed.

██ As concerns post-judgment interest, the circuit court held in its July 12, 2010, order that interest would accrue at the legal rate of interest, accruing from February 22, 2010. The legal rate of interest in Kentucky is 8 percent per annum as set out in KRS 360.010(1). Appellees argue that they are entitled to post-judgment interest of 12 percent per annum from April 26, 2006, as allowed by KRS 360.040. The circuit court conducted a hearing on this issue on April 9, 2010, pursuant to KRS 360.040. The court concluded that since damages were unliquidated up to the date of judgment, the lower interest rate of 8 percent per annum would be applied post-judgment. Imposition of 8 percent interest on the judgment was a matter of the circuit court's sound discretion, as permitted by KRS 360.040, and appellees have failed to demonstrate that the circuit court abused its discretion on this issue.

For the foregoing reasons, the judgment of the Perry Circuit Court is affirmed in both appeals (2010–CA–000898–MR and 2010–CA–001490–MR) and cross-appeals (2010–CA–000945–MR and 2010–CA–001619–MR).

ALL CONCUR.